Dennis Lee STITES, Frances Beth Stites, his wife, Gerald K. Dodd, Donna Dodd, his wife, Gerald K. Dodd, as Next Friend of Kenneth A. Dodd, a Minor and Jerry T. Dodd, a Minor, Earl J. Greenman, Barbara Greenman, his wife, Earl J. Greenman, as Next Friend of Earl J. Greenman, Jr., a Minor and Jason Greenman, a Minor, Dean Bussler, Judith Bussler, his wife, Dean Bussler, as Next Friend of James Bussler, a Minor, Mark Bussler, a Minor and George Bussler, a Minor, Jeanie Bussler, Individually and as Next Friend of Megan Jean Hill, a Minor, Devern Walker, Dorothy Walker, his wife, and Robert Walker, Vickie Archer, Individually and as Next Friend of Robert Dean Archer, a Minor, and Mary Martha Archer, an Infant, James Joseph Each, Maryanne Donchetz-Each, his wife, Maryanne Donchetz-Each, as Next Friend of Molly N. Each, a Minor, Katherine M. Each, a Minor and John H. Each, a Minor, Ann M. Kneller, Ruth O. Gillette, Plaintiffs.

v.

SUNDSTRAND HEAT TRANSFER, INC., a subsidiary of Sundstrand Corporation, a Delaware corporation, Defendant.

No. K84–299.

United States District Court, W.D. Michigan, S.D.

May 26, 1987.

John R. LaParl and Robert Burkholz, Kalamazoo, Mich., William Goodman and Elizabeth Gleicher, Detroit, Mich., for plaintiffs.

Grant Gruel and J. Clarke Nims, Grand Rapids, Mich., Michael S. Marcus and Jeffrey K. Sherwood, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for defendant.

## OPINION

ENSLEN, District Judge.

In this opinion, the Court will address two of the four motions that are pending before it for decision in this case: (1) defendant's March 19, 1987 motion to strike third amended complaint or for reconsideration of order granting leave to amend; and (2) defendant's August 25, 1986 motion for partial summary judgment on all cancer-related claims. For the reasons discussed below, the Court will schedule a hearing on defendant's motion to strike or to reconsider, and will grant in part and deny in part defendant's motion for partial summary judgment. I will discuss defendant's motions in the order in which they are listed above.

### Facts

The plaintiffs in this case are or were residents of Dowagiac, Michigan, who allege that they have suffered severe injuries from exposure to various toxic chemicals leaked from a manufacturing plant defendant operates in Dowagiac. Since the 1950s, defendant has been operating a plant in Dowagiac that manufactures copper and aluminum air conditioning coils and condenser units. During the manufacturing process, defendant uses various industrial chemicals. One of these chemicals is trichloroethylene ("TCE"), which defendant employs as a metal degreasing agent. Plaintiffs allege, and the evidence in the record tends to establish, that due to defendant's failure to have properly disposed of used TCE, large quantities of the chemical entered plaintiffs' drinking water, and was present in their water for several years. As a result of this TCE presence, plaintiffs suffered a prolonged and extensive exposure to the chemical that greatly exceeded EPA-recommended limitations. Plaintiffs allege that this prolonged and extensive exposure to TCE, as well as other chemicals, caused them to suffer "a depreciation in the market value of their property, loss of the use and enjoyment of their property and severe and permanent injury and damage to their physical health, severe depression over a fear of cancer, as well as humiliation, anxiety, mortification, anguish, emotional distress, outrage and a loss of society and companionship from fellow family members, all of which is past, present and future." Second Amended Complaint ¶ 30.

With regard to TCE in particular, plaintiffs allege that "acute exposure [to] concentrations of TCE above 4.5 ppb, are known to produce many symptoms and/or ailments in humans, including, *inter alia,* liver damage, kidney damage, pulmonary edema, nausea, vomiting, headache, blurred

vision, serious eye damage, paralysis of the nerves of the face and other extremities, coma and cancer." *Id.* ¶ 10. Plaintiffs expand this allegation somewhat in their third amended complaint. Since defendant bases its motion for partial summary judgment on plaintiffs' second amended complaint, however, the Court will rely on paragraph ten of that complaint in deciding defendant's motion. As I discuss below, moreover, I have scheduled a hearing to decide whether I should strike the third amended complaint. The Court will discuss the facts of this case further in its discussions of defendant's specific motions.

### A. *Motion to Strike or to Reconsider*

At the status conference held on February 11, 1987, plaintiffs requested leave to file a third amended complaint. The Court granted the request, subject to defendant's right to request an extension of the discovery deadline if needed to respond to the complaint. Plaintiffs filed their third amended complaint on February 17, 1987. As the parties discuss in their memorandums on defendant's motion, the third amended complaint in several respects significantly expands the scope of this lawsuit. Plaintiffs, for example, have added three new chemicals to the list of toxic chemicals that they allege caused them to suffer serious, permanent injury to their bodies, and have expanded the kinds of harm they allegedly have suffered from their exposure to such chemicals.

On March 19, 1987 defendant requested the Court to reconsider its decision to grant plaintiffs leave to amend their complaint and to strike the third amended complaint. It alleges that the amended complaint exceeds the scope of what plaintiffs' attorney indicated at the status conference he intended to add to the complaint, and that it will have to devote substantial time and effort in order to meet plaintiffs' new and expanded allegations. Plaintiffs respond that they fully explained the nature of their request and of the additions they planned to make to their complaint at the status conference. In addition, they argue that defendant knew before this suit was filed that the three newly added chemicals were

in plaintiffs' drinking water, and that defendant's expert witnesses have conducted extensive research on the toxic effects of those chemicals. Plaintiffs thus conclude that defendant will not have to incur substantial expense, or to take a substantial amount of time, to prepare to respond to their new allegations.

Rule 15(a) of the Federal Rules of Civil Procedure establishes a liberal standard for granting leave to amend a complaint. *See Moore v. City of Paducah,* 790 F.2d 557 (6th Cir.1986). There are, however, certain limits to this rule which a Court must respect in deciding whether to allow a plaintiff to amend a complaint. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In this instance, the Court does not have sufficient information to decide whether it should allow plaintiffs' third amended complaint to stand. I find, rather, that I will have to conduct a hearing on the issue. At this hearing, the parties should be prepared to address the following issues: (1) their understanding of what occurred at the February 11, 1987 status conference regarding plaintiffs' request for leave to amend; (2) why plaintiffs waited until February 19, 1987 to file an amended complaint adding three chemicals and identifying other chemicals as carcinogens for the first time; (3) when they would be prepared to go to trial if the Court were to allow the third amended complaint to stand; and (4) the nature and extent of the additional discovery that the third amended complaint would require them to conduct. The parties are, of course, free to address whatever other issues they wish at this hearing.

Given that a summary jury pretrial conference is scheduled for June 1, 1987 in this case, the Court believes it would be best to hold this hearing at that time. Since defendant claims that it will have to conduct extensive discovery and other research before it will be able to respond to plaintiffs' new allegations, and since the Court will not decide until June 1 whether it should allow plaintiffs' third amended complaint to stand, the parties should assume that the

second amended complaint is controlling for purposes of the summary jury trial.

### B. *Motion for Partial Summary Judgment*

Defendant directs its motion for partial summary judgment at plaintiffs' cancer-related claims. Specifically, although none of them have had or presently suffer from cancer, plaintiffs claim that their exposure to TCE has caused them to suffer an increased risk of acquiring cancer in the future, which they argue is a presently compensable injury, and in addition has caused them to suffer severe depression over a fear of cancer. Defendant argues that TCE is not a human carcinogen, and that plaintiffs' cancer-related claims are without merit. Plaintiffs respond that there is substantial evidence that TCE is a human carcinogen, and that under Michigan law they may recover both for the enhanced risk that they will acquire cancer in the future and their presently existing fear and emotional distress about cancer.

### 1. *The Parties' Contentions*

Defendant first discusses its argument that plaintiffs cannot recover for any increased susceptibility to cancer they may have due to their exposure to TCE. It argues that under Michigan law, which both parties agree applies in this case, plaintiffs cannot succeed on their increased risk of cancer claim unless they can establish at trial that this future consequence of their exposure to TCE is "reasonably certain" to occur. *Larson v. Johns-Manville Sales Corp.*, 427 Mich. 301, 316–17, 399 N.W.2d 1 (1986); *Brininstool v. Michigan United Railways Co.*, 157 Mich. 172, 180, 121 N.W. 728 (1909). Defendant further argues that plaintiffs cannot satisfy this reasonable certainty standard, and that the Court thus should grant its motion for partial summary judgment, because "there is no epidemiological evidence or animal data demonstrating, to a reasonable degree of medical and scientific certainty, that TCE is a human carcinogen." Defendant's Memorandum in Support of Motion for Partial Summary Judgment on All Cancer-Related Claims at 2. Defendant backs up this statement, both in its main memorandum and in its reply memorandum, with extensive affidavits from several well-qualified experts indicating that one cannot say, with a reasonable degree of medical and scientific certainty, that TCE is a human carcinogen.

Specifically, defendant presents six affidavits in support of this aspect of its motion. The first affidavit is a joint affidavit from seventeen experts in the field of cancer (the "Cancer Affidavit"). These experts state that "one cannot conclude to a reasonable degree of medical and scientific certainty that TCE is a human carcinogen." Cancer Affidavit ¶ 20. They further state that even if one were to assume that TCE poses some human carcinogenic risk, "there still is no reasonable basis, let alone a reasonable degree of medical or scientific certainty, to conclude that TCE at levels of 12 ppm and below presents a risk, which could be classified as other than extremely speculative and insignificant, of developing cancer as a result of this exposure to any individual so exposed." *Id.* Defendant's cancer experts support these conclusions with an extensive discussion of the available epidemiological evidence, evidence from studies with experimental animals, and results of cell transformation and mutagenicity tests. They also assert that application of a cancer risk assessment model to plaintiffs' case, even using a worst-case scenario, establishes that "the fractional increase in total cancer risk due to 12 ppm TCE exposure ... is infinitesimal and virtually nil." *Id.* ¶ 78.

The next two affidavits concern cancer risk assessments conducted by a Dr. Crump. In an affidavit he submitted in support of defendant's initial memorandum, Dr. Crump asserts that even though he employed a number of conservative assumptions concerning plaintiffs' risk of acquiring cancer, he must conclude that it is "highly unlikely" that any of the plaintiffs will get cancer as a result of their exposure to TCE. Dr. Crump estimates that plaintiffs' risks of acquiring cancer from their exposure to TCE range from 186 per 100,000 (or .186%) to .00006 per 100,000

(or .00000006%). The differences in risks reflect the differing characteristics of the plaintiffs, whether the risk assessment is based on data from mouse studies or on data from rat studies, and the varying stages of the carcinogenic process which it is assumed the exposure to TCE affected.

Dr. Crump made some additional comments on plaintiffs' cancer risks in an affidavit he submitted in conjunction with defendant's reply memorandum. In that affidavit, Dr. Crump responded to plaintiffs' assertions that he had failed to consider other illnesses from which plaintiffs presently suffer, that he had failed to consider the possible synergistic effects between TCE and other carcinogens to which plaintiffs are or had been exposed, and that he had underestimated the level of TCE to which plaintiffs had been exposed. Dr. Crump states that the first two objections do not affect the validity of his conclusions. With regard to the final objection, Dr. Crump recalculated his assessments using a higher exposure level. He determined that even at this higher level, plaintiffs' risks of getting cancer are small.

The fourth affidavit is a joint affidavit from nine experts in the field of immunology, who assessed the validity of plaintiffs' experts' assertions that exposure to TCE may cause dysfunctions in the immune system that may lead to the development of cancer. In a rather detailed affidavit, these experts explain the basis for their conclusions that "[i]t cannot be concluded ... to a reasonable degree of medical and scientific certainty, that TCE and the other solvents cause immune deficiency disorders, immunosuppression or other immunologic abnormalities in humans" and that "[t]t cannot be said ... to a reasonable degree of medical and scientific certainty, that the immune system plays a significant role in preventing the development of cancer in humans." Immunocancer Affidavit ¶¶ 14 & 15. Defendant concludes, based on these experts' analysis, that plaintiffs have not met their burden of establishing that there exist genuine issues of material fact to be tried on the immune system issue.

Defendant's fifth affidavit, by a Dr. Seymour Friess, responds to plaintiffs' expert's assertion that TCE may metabolize in the human body into an epoxide that is an active carcinogenic agent. Dr. Friess asserts that the human body readily metabolizes and eliminates TCE, and that "[t]here is no observable build-up of the unstable TCE epoxide in the liver tissue, even at high dosing with TCE, to begin any carcinogenic initiation process in that target organ." Affidavit of Seymour L. Friess, Ph.D. ¶ 7. He thus states that "it cannot be concluded, to a reasonable degree of medical and scientific certainty, that TCE epoxide produced metabolically from TCE in the mammalian liver is an active carcinogenic agent in test animals or in humans." *Id.*

Defendant's final affidavit on this issue is from a Dr. Jaeger, and addresses whether the "asymmetry of chlorinated ethylenes is a significant factor in their toxicity and carcinogenicity." Affidavit of Rudolph J. Jaeger, Ph.D., DABT at 4. Dr. Jaeger asserts, based on his review of the literature and his own work in the area, that there is "no support in the epidemiologic literature for the proposition that trichloroethylene's structure or its asymmetry is causally related to carcinogenesis," and that absent a causal relationship, "the assertion that a relationship is known to exist between trichloroethylene and cancer is speculative and not justified by the data." *Id.* at 8.

In response to defendant's arguments and affidavits, plaintiffs argue that they have met their burden, in accordance with the standards governing summary judgment motions and with Michigan law, of establishing that there exists a genuine factual issue concerning the extent of their enhanced risk of acquiring cancer due to their exposure to TCE that should allow them to survive defendant's motion for summary judgment and to present their case to the jury. Plaintiffs assert that under Michigan law, the risk of any uncertainty concerning future damages should be cast on the wrongdoer, and the case should be withheld from the jury only if there is "a complete want of proof, show-

ing or tending to show" the requisite probability of future consequences. *Gilson v. Bronkhorst*, 353 Mich. 148, 157, 90 N.W.2d 701 (1958). They further assert that they have produced sufficient support for their increased risk of cancer claim to enable them to bring such claim before the jury. As evidence of this support, plaintiffs offer three expert affidavits.

The first affidavit is from a Dr. Marc Lappe. Dr. Lappe states that he participated in a study conducted in the early 1980s that concluded that "TCE itself (and not a contaminant) was carcinogenic in mice, a finding echoed by human epidemiological data," and which was consistent "with TCE being a weak carcinogen." Affidavit of Marc Lappe, Ph.D. at 1. Dr. Lappe also states that subsequent studies have "extended the findings of TCE's carcinogenicity to" rabbits and rats, *id.* at 2, and notes that the EPA "has identified TCE as a probable human carcinogen and recommended that no TCE be permitted in drinking water." *Id.* at 3. He asserts in addition that the presence of other similar chemicals in plaintiffs' drinking water probably augmented "TCE's acute and chronic effects additively, including carcinogenicity." *Id.* Dr. Lappe concludes that although the carcinogenic effect of TCE and the other chemicals is "difficult if not impossible to quantitate," Dr. Crump's risk assessment in and of itself warrants "concern about a carcinogenic hazard to humans exposed to 10 ppm of TCE in drinking water" because Dr. Crump concludes that plaintiffs face an aggregate risk that is well above "the regulatory standard of 1 in a million." *Id.* He states that the plaintiffs "whose domestic water systems have been contaminated with TCE in the ppm range, have been exposed to a very significant health risk, including but not limited to a risk of cancer well above the level which health officials have taken to generate an unacceptable risk in either workplace or domestic environments." *Id.* at 4.

Plaintiffs' second affidavit is from Dr. Bertram Carnow, who is an expert in the fields of occupational and environmental medicine. Dr. Carnow states, based on his examinations of the plaintiffs, that the plaintiffs are "suffering from chronic systemic chemical poisoning as a result of absorption into their bodies of trichloroethylene (TCE) and other halogenated hydrocarbons with damage to and dysfunction of major organs and organ systems resulting in many cases in serious medical problems." Carnow Affidavit at 4. Dr. Carnow found in particular that the plaintiffs have suffered damage to their immune systems and dysfunctions of a major enzyme system, and believes that these two problems have resulted in a "greatly increased susceptibility to a number of future illnesses, particularly cancer." *Id.* In his affidavit, Dr. Carnow discusses in great detail how TCE has affected the plaintiffs and has increased their susceptibility to cancer. He concludes that plaintiffs are "at extremely high risk of contracting cancer over their lifetimes" and suffer from a "marked increased cancer risk," and predicts that "as the latency period is increased," cancers "will begin to appear" among the plaintiffs. *Id.* at 14–15.

Plaintiffs' final affidavit is from Dr. Shirley Conibear. In her affidavit, Dr. Conibear extensively discusses the toxic effects of TCE on humans and how exposure to TCE may lead to the development of cancer. She notes that the plaintiffs probably have absorbed significant amounts of TCE, and asserts that TCE is capable of causing serious damage to several areas of the body, including liver cells, the kidney, the brain and central nervous system, and the immune system. She states that during the metabolic process, TCE causes an epoxide to form that "is generally believed" to be "responsible for much of the toxicity, including the carcinogenicity, of trichloroethylene." Conibear Affidavit at 5–6. Dr. Conibear also discusses how exposure to TCE can increase an individual's susceptibility to cancer by reducing glutathione levels, and thereby leaving the individual "more vulnerable to exposure to other epoxide-forming chemicals and more vulnerable to further exposure to TCE itself," *id.* at 7–8, and by creating mutant cells. *Id.* at 8–9. Finally, Dr. Conibear states that the molecular structure of TCE, which

is similar to that of vinyl chloride, a known human carcinogen, is "a significant factor" in its toxicity to the human body, "including carcinogenicity." *Id.* at 9. She asserts that numerous human and animal studies support the conclusion that TCE is a human carcinogen.

Defendant next discusses plaintiffs' claims that they suffer from "severe depression over a fear of cancer." It argues that under Michigan law, plaintiffs can recover on their fear of cancer claim only if they can establish that they have suffered a "definite and objective physical injury" as a "result of emotional distress proximately caused by defendant's negligent conduct." *See Daley v. LaCroix,* 384 Mich. 4, 12, 179 N.W.2d 390 (1970). Defendant further argues that plaintiffs cannot recover for emotional distress, or depression over a fear of cancer, under *Daley* for three reasons. First, defendant argues that plaintiffs' alleged emotional distress is not compensable because it is "vague and indefinite and does not differ from normal concerns about cancer." Second, defendant argues that because TCE is not a human carcinogen, plaintiffs' fears are not reasonable and hence not compensable. Finally, defendant argues that plaintiffs cannot recover for their alleged fear of cancer because they "have not presented evidence of any definite and objective physical injury resulting from their alleged fear." Reply Memorandum at 57–58. As factual support for its arguments, defendant presents an affidavit from a psychiatrist, Dr. Ellisa P. Benedek, in which Dr. Benedek discusses the results of her interviews with the adult plaintiffs, her reviews of the adult plaintiffs' medical records, and her reviews of another psychiatrist's interviews with the minor plaintiffs, and concludes that none of the plaintiffs have "any mental disorder which to a reasonable degree of medical certainty can be attributed to TCE exposure," "a fear which has impaired his or her occupational or social functioning," or "any physical injury" resulting from an "alleged fear of cancer." Affidavit of Ellisa P. Benedek at 4–5.

In response, plaintiffs acknowledge that to recover on this claim, they must establish at trial that they have suffered "definite and objective physical injury ... as a result of emotional distress proximately caused by defendant's negligent conduct." Plaintiffs' Brief in Opposition at 25. They argue, however, that they need not establish that they suffer from a substantial bodily injury or sickness, but rather simply from some "physical reactions to being chemically poisoned." *Id.* Plaintiffs argue that each of them has exhibited real "physical symptoms of anguish due to fear of drastic consequences from TCE" which should suffice to allow them to recover for their injuries under *Daley.* Finally, plaintiffs argue that their fears and emotional distress are reasonable because TCE and the other chemicals to which they were exposed are known carcinogens.

### 2. *Summary Judgment Standard*

Rule 56(c) provides that a court shall render summary judgment for the moving party if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). As the Court of Appeals for the Sixth Circuit recently discussed, rule 56 establishes a burden-shifting method for analyzing summary judgment motions:

> The burden is on the moving party to show conclusively that no genuine issue of material fact exists.... The district court must view the evidence with all inferences drawn therefrom read in the light most favorable to the party opposing the motion.

> Once the moving party presents evidence sufficient to support the motion under Rule 56(c), the adverse party must set forth specific facts showing that there is a genuine issue for trial.... The nonmoving party is not entitled to a trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint.... Thus Rule 56(e) requires a shifting of burdens to the opposing party if the mov-

ing party has satisfied Rule 56(c). If the court finds after reviewing the evidence that no genuine issue of material fact exists, the moving party is entitled to a judgment as a matter of law....

*Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986) (citations omitted). As the Supreme Court recently stated, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* — U.S. —, —, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at —, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

The nonmoving party is not required to respond with "evidence in a form that would be admissible at trial." *Id.* It must, however, establish that there is a *genuine* factual issue to be tried. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, —, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986) (citation omitted). Although the trial judge should not "weigh the evidence and determine the truth of the matter," "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* — U.S. —, —, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986). In making this determination the trial court must apply the substantive standard of proof that would prevail at trial. In this case, therefore, I must consider whether "reasonable jurors could find by a preponderance of the evidence that the plaintiff[s] [are] entitled

to a verdict" on their cancer-related claims. *Id.* at —, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Defendant spends much of its memorandum and reply memorandum discussing the summary judgment standard, the affidavits it has offered in support of its motion, and plaintiffs' responding affidavits. In its reply memorandum in particular, defendant urges the Court to review plaintiffs' affidavits carefully, and to discount them entirely pursuant to rules 104(a), 403, 702, and 703 of the Federal Rules of Evidence because the expert testimony plaintiffs have proffered would not be admissible at trial. *See In re Agent Orange Product Liability Litigation,* 611 F.Supp. 1267, 1279 (E.D.N.Y. 1985). Defendant argues that the Court should not credit the affidavits filed by plaintiffs' experts because the experts' conclusions are speculative and are not based on data reasonably relied on by experts in the field. *Id.* at 1280 ("The reasonable reliance requirement means that an expert may not base his or her testimony on hearsay that would not be used by other experts in the field"); *see* FRE 703. Defendant in essence requests the Court to find the evidence proffered by plaintiffs' experts not to be "credible," in the sense that their conclusions are neither sound nor supported by appropriate test results and other data. If the Court discounts plaintiffs' affidavits, then plaintiffs arguably have failed to meet their burden of establishing that there exist genuine factual issues to be tried.

### 3. *Discussion*

#### a. *Risk of Cancer Claim*

The Michigan Supreme Court recently stated that "[i]n Michigan, in order to recover damages on the basis of future consequences, it is necessary for a plaintiff to demonstrate with 'reasonable certainty' that the future consequences will occur." *Larson,* 427 Mich. at 316–17, 399 N.W.2d 1. I am bound by this standard, particularly since *Larson,* like this case, involved claims of exposure to a carcinogen. The plaintiffs in *Larson* had been exposed to asbestos,

and had subsequently developed asbestosis and, in two cases, cancer. The two plaintiffs who had developed cancer had not filed suit within three years (the applicable statute of limitations period) of their discovery of their asbestosis, but had filed suit within three years of their discovery of their cancer. The Michigan Supreme Court thus had to decide whether the plaintiffs could proceed with their cancer claims even though their asbestosis-related claims were untimely.

The court ruled in plaintiffs favor because if they "had brought suit within three years of the discovery of asbestosis and attempted to recover for the likelihood of developing cancer in the future, either would have been unable to prove with 'reasonable certainty' that he would develop cancer." *Id.* at 317, 399 N.W.2d 1. It further indicated that if the plaintiffs had brought an earlier suit, evidence demonstrating that they had a fifteen percent chance of acquiring cancer from their exposure to asbestos probably would not have sufficed to have allowed them to recover for such increased risk. *Id.* (indicating that such evidence would have been insufficient because the chance that the plaintiffs would develop lung cancer would have been " 'too speculative to support a damage award' ") (citation omitted). The Michigan Supreme Court in addition stated that not only would the low (15%) increased risk have hindered plaintiffs' efforts if they had filed an earlier suit, but plaintiffs also would have had to contend with the difficulty of quantifying the "additional risk of lung cancer posed by the asbestos exposure" when additional factors, such as cigarette smoking, also enhanced their risk of acquiring cancer. *Id.*

Although the Michigan Supreme Court stated that the *Larson* rule for subsequent damages applies only in asbestos cases, I consider myself bound by that court's statement of when a plaintiff may recover for future consequences of an injury. In particular, the Michigan Supreme Court quoted with approval a 1924 decision in which it had indicated that a reasonable certainty is more than a reasonable probability, "describes the highest degree of probability," and "has practically the same meaning as 'in all likelihood' ". *King v. Neller*, 228 Mich. 15, 22, 199 N.W. 674 (1924).

■ Given this standard for recovery, the Court does not believe that plaintiffs have met their burden of designating specific facts showing that there is a genuine issue for trial. I find, rather, that the record taken as a whole could not lead a rational jury to return a verdict for the plaintiffs. The Court does not reach this decision easily. I have determined, though, that plaintiffs simply have failed to demonstrate the existence of sufficient facts showing that they could establish at trial a reasonable certainty of acquiring cancer in the future.

Initially, the Court finds that defendant has met its burden of properly supporting its motion under rule 56(c). The affidavits defendant submitted in support of its motion demonstrate, if unrebutted, that there is no genuine issue of material fact regarding plaintiffs' risk of cancer claim. Specifically, defendant's affidavits indicate that there is no reasonable certainty that plaintiffs will acquire cancer in the future. The Court notes in particular that Dr. Crump's analyses, *i.e.*, his cancer risk assessments, of the plaintiffs' conditions indicate that the likelihood that plaintiffs will get cancer is significantly less than the reasonable certainty Michigan law requires.

Plaintiffs attempted to rebut defendant's affidavits, and to demonstrate that there exist genuine issues of material fact for the jury to resolve, by submitting three affidavits from their own experts. For the following reasons, the Court finds plaintiffs' affidavits insufficient to demonstrate that a reasonable jury could find by a preponderance of the evidence at trial that plaintiffs are entitled to recover on their cancer risk claim.

First, the Court notes that none of plaintiffs' experts were able to quantify the enhanced cancer risk plaintiffs face because of their exposure to TCE. The Court appreciates the difficulty of quantifying plaintiffs' enhanced risk of cancer, particu-

larly given that plaintiffs were exposed to several other chemicals that also may be carcinogenic. Yet plaintiffs were unable to establish that they have anything near a reasonable certainty of getting cancer in the future. Given this lack of significant probative evidence on this portion of plaintiffs' claims, the Court must find that plaintiffs have failed to establish that there exist material factual issues to be tried. A brief discussion of plaintiffs' affidavits and the studies that have been submitted to the Court will document plaintiffs' failure to have met their burden in this instance.

Dr. Lappe states in his affidavit his conclusion, based on animal studies (mice) and human epidemiological data, that TCE is a "weak carcinogen." He also notes that plaintiffs' TCE exposure probably greatly exceeded the level deemed safe in a workplace environment. He was not, however, able to quantify plaintiffs' risk, other than to state that the plaintiffs "have been exposed to a very significant health risk," including "a risk of cancer well above the level which health officials have taken to generate an unacceptable risk in either workplace or domestic environments." Dr. Lappe also states, though, that Dr. Crump "is a recognized expert in risk estimation," and does not contradict Dr. Crump's affidavit, other than to indicate that his evaluation "of the data ... is potentially misleading"—apparently because Dr. Crump did not consider the full extent of plaintiffs' exposure to TCE and because even Dr. Crump's "calculations ... warrant concern about a carcinogenic hazard to humans exposed to 10 ppm of TCE in drinking water." Dr. Lappe's concerns, however, are based on regulatory standards, not the Michigan legal standard of reasonable certainty. Plaintiffs may well have been exposed to TCE in amounts greatly exceeding those considered safe in either a domestic or a workplace environment. The Court, however, is not concerned with regulatory standards in this case, important as they are, but rather must base its decision on the Michigan legal standard. *See* C. Nothstein, *Toxic Torts* ¶ 16.06, at 464 (1984).

Dr. Carnow's affidavit similarly fails to quantify plaintiffs' enhanced risk of cancer.

Dr. Carnow states that plaintiffs suffer from a "greatly increased susceptibility" to cancer, are at "extremely high risk of contracting cancer over their lifetimes," and have suffered "permanent and irreversible" damage to their bodies. He also presents several plausible explanations, based on his examinations of plaintiffs and his understanding of the studies on the carcinogenic properties of TCE, for why plaintiffs face this increased risk. Dr. Carnow's failure to have quantified plaintiffs' increased risk, and in particular his failure to have addressed Dr. Crump's affidavit, however, leaves the Court with no basis for finding that there exists a genuine issue of fact for the jury to resolve. In their brief, plaintiffs state that Dr. Crump's risk estimations based on mouse laboratory studies and early stage carcinogensis demonstrate that plaintiffs "likelihood of developing cancer as a result of TCE ingestion is enormous and unacceptable." Brief at 19. Based on these factors, however, Dr. Crump's highest estimation of risk is 186/100,000. While this risk may be unacceptable in a regulatory setting, it does not demonstrate a reasonable certainty that the affected plaintiff will get cancer.

Finally, Dr. Conibear's affidavit also fails to demonstrate that there exist genuine issues of material fact to be tried on this element of plaintiffs' case. Like Dr. Carnow, Dr. Conibear presents several plausible explanations, based on her examinations of the plaintiffs and on her understanding of the experimental data, for why plaintiffs face an enhanced risk of developing cancer. Dr. Conibear may be correct in her assertion that TCE is a carcinogen and has been linked to cancer. Her affidavit fails to show, however, why the Court must allow plaintiffs' risk of cancer claim to go to the jury.

The studies defendant has presented to the Court similarly indicate that plaintiffs cannot establish that there exists a genuine issue of fact regarding their risk of cancer claim. The Blair, DeCoufle, and Grauman study concluded that exposure to TCE, along with other chemical agents used in the laundry and dry cleaning industry,

"may increase the risk of certain cancer." They acknowledged, however, that their study was preliminary, and merely underscored the need for additional epidemiological studies. Similarly, the Woburn study found a "positive association between ... exposure [to water containing TCE] and the incidence rate of childhood leukemia," but indicated that such exposure did not account entirely for the increased number of leukemia cases in Woburn and that the study could not quantify the enhanced risk of cancer Woburn's residents face due to their exposure to TCE. Finally, the Chcekoway, Wilcosky, Wolf, and Tyroler study did not establish a significant relationship between exposure to TCE and leukemia.

Accepting plaintiffs' risk of cancer claim in this instance may allow plaintiffs to recover, from a jury, monetary relief for an injury they are not reasonably certain to suffer. The Court accordingly believes that it should grant defendant's motion for summary judgment on plaintiffs' risk of cancer claim. *See Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315, 319 (5th Cir.1986) ("a plaintiff can recover [for an increased risk of cancer] only where he can show that the toxic exposure more probably than not *will* lead to cancer") (emphasis in original); *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 413 (5th Cir. 1986) (en banc) (same). I am not ruling that TCE is not a human carcinogen; I believe that only the finder of fact could decide that issue. The Court finds, rather, that given Michigan's reasonable certainty standard, plaintiffs have failed to establish that there exist genuine factual issues to be tried on this element of their case.

### b. *Fear of Cancer Claim*

■ Plaintiffs' fear of cancer claim is more difficult to resolve. Under *Daley*, plaintiffs can recover for physical injury "produced as a result of emotional distress proximately caused by defendant's negligent conduct" if such injury is "definite and objective." *Daley*, 384 Mich. at 12, 179 N.W.2d 390. To recover on their fear of cancer claim, plaintiffs must establish (1) that they have suffered emotional distress as a proximate result of defendant's negli-

gent conduct; (2) that this emotional distress has manifested itself in definite and objective physical injury; and (3) that their emotional distress is not "about a completely fictitious, vague, fanciful or imagined consequence, having no reasonable basis." *See id.* at 12–13, 179 N.W.2d 390; *Birkhill v. Todd*, 20 Mich.App. 356, 367, 174 N.W.2d 56 (1969). As the Court stated previously, defendant sets forth three reasons why it is entitled to summary judgment on plaintiffs' fear of cancer claim: (1) because plaintiffs' fear is vague and indefinite and does not differ from normal concerns about cancer; (2) because TCE is not a human carcinogen, and plaintiffs' fears thus are not reasonable; and (3) because plaintiffs' fears have not manifested themselves in the form of definite and objective physical injury.

■ The Court rejects defendant's first and second grounds in support of its motion. It is true that several of the plaintiffs apparently have not stated definite and concrete fears of acquiring cancer. I believe, however, that the evidence in the record is sufficient to create a genuine factual issue on the extent and definiteness of plaintiffs' fears and resulting physical injuries. *See Hagerty*, 788 F.2d at 318 ("It is for the jury to decide questions such as the existence, severity and reasonableness of the fear"). The Court believes that defendant's argument is directed more toward the extent of plaintiffs' recoveries, if any, then toward the existence of a cause of action. The Court also believes that whether plaintiffs' fears are reasonable, and whether they are proximately linked to plaintiffs' exposure to TCE, also are issues for the jury to decide. *See Anderson v. W.R. Grace & Co.*, 628 F.Supp. 1219, 1228 (D.Mass.1986). I believe that the parties' affidavits create a genuine factual issue as to whether TCE is a human carcinogen, even a weak one. The jury thus must decide whether plaintiffs' fears are reasonable, or rather should be discounted as nothing more than normal concerns about cancer.

The physical manifestation element of plaintiffs' claim is more difficult to resolve

in determining whether there are genuine issues of fact for the jury to decide. As this Court has noted previously, Michigan courts "are very lenient in finding allegations [of physical harm] sufficient" to satisfy the "definite and objective physical injury" standard. *Parnell v. Booth Newspapers, Inc.*, 572 F.Supp. 909, 917 (W.D.Mich. 1983). Although general claims of physical distress, pain, and suffering will not suffice, *id.*, in *Daley* the Michigan Supreme Court indicated that a plaintiff's burden in this regard is minimal. *Daley*, 384 Mich. at 15, 179 N.W.2d 390 (indicating that claims of nervousness may satisfy the physical injury requirement).

In deciding defendant's motion in this regard, the Court has reviewed the available records of each individual plaintiff. Based on this review, I believe that the following plaintiffs have not demonstrated that there exists a genuine factual issue regarding the definite and objective physical injury requirement that would allow them to take their emotional distress claims to the jury: Kenneth Dodd; Jerry T. Dodd; Earl Greenman, Jr.; Jason Greenman; James Bussler; Mark Bussler; George Bussler; Devern Walker; Dorothy Walker; Robert Archer; James Each; Molly Each; Katherine Each; and John Each. These plaintiffs have failed to rebut defendant's showing that their alleged emotional distress over cancer has failed to manifest itself in a definite and objective physical injury.

■ Most of the remaining plaintiffs, reading the evidence in the record in the light most favorable to them, have demonstrated that there exists a genuine issue of whether they have manifested the requisite definite and objective physical injury. For other plaintiffs, defendant has failed to carry its initial burden of demonstrating that no genuine issue of fact on this claim exists. The Court is not, of course, deciding whether the plaintiffs whose emotional distress or fear of cancer claims remain will be able to recover at trial. I was impressed by Dr. Benedek's analysis and conclusions regarding plaintiffs' claims of mental depression and other emotional dis-

tress. I believe, however, that the plaintiffs whose claims remain have adequately rebutted her conclusions that "there is no evidence which indicates to a reasonable degree of medical certainty that any of the plaintiffs have experienced any physical injury as a result of their alleged fear of cancer." I interpret Michigan law as imposing only a slight burden on the plaintiffs in this regard, and as expressing a strong presumption that the jury should decide whether a plaintiff's claim of negligent infliction of emotional distress is valid.

■ The final cancer-related issue is whether the Court should dismiss the claims of the Each family because they allegedly have failed to demonstrate that their water was contaminated by TCE. Defendant argues that summary judgment is proper because the well data indicates that the Each family was not exposed to TCE. Plaintiffs argue that the Each family's claim is proper because a TCE metabolite was discovered in the placenta of Maryanne Each after she had given birth to John Each. Given the persuasive evidence in the record that every other plaintiff was exposed to TCE through his or her drinking water, the Court can reasonably infer that the Each family also was exposed to TCE through their drinking water. The Each plaintiffs will, of course, have to establish at trial that such exposure actually occurred. The Court does not believe, though, that it should preclude the Each family's claims simply because a well sample taken on one day failed to disclose any TCE.

For the above reasons, the Court will enter an order granting defendant's motion for partial summary judgment in part and denying it in part.

### ORDER

In accordance with the opinion dated May 26, 1987;

IT IS HEREBY ORDERED that the Court will conduct a hearing on defendant's March 19, 1987 motion to strike third amended complaint or for reconsideration of order granting leave to amend on June 1, 1987 at 3:00 p.m.;

IT IS FURTHER ORDERED that defendant's August 25, 1986 motion for partial summary judgment on all cancer-related claims is GRANTED in part and DENIED in part.