## ARNTZ v SOUTHWESTERN WILBERT CORPORATION

Docket No. 90060. Submitted October 9, 1986, at Grand Rapids. Decided November 17, 1986.

Plaintiff, Maurice Arntz, a general assistance recipient, brought a negligence action in the Berrien Circuit Court seeking damages for injuries sustained while participating in the Department of Social Services' Community Work Experience Program, commonly referred to as "work fare." The plaintiff was injured while working at Crystal Springs Cemetery, a division of the City of Benton Harbor, when a trailer in which he was riding overturned. Plaintiff applied for and received workers' compensation benefits from the State of Michigan. Named as defendants in the action were Steven Strouse, the driver of the tractor pulling the trailer, Southwestern Wilbert Corporation and Robert Strouse, the burial vault company which employed Steven Strouse and the company's owner, and the cemetery. The defendants filed motions for summary disposition alleging that the exclusive remedy provision of the Workers' Disability Compensation Act barred plaintiff's claims. The trial court, Ronald J. Taylor, J., granted the cemetery's motion and denied those of the remaining defendants. Plaintiff subsequently settled with the remaining defendants. Plaintiff appeals from the order granting summary disposition to the cemetery.

The Court of Appeals *held:*

The trial court did not err in ruling that the cemetery was an employer of plaintiff for purposes of the Workers' Disability Compensation Act, so that plaintiff was barred by the exclusive remedy provision of the act from maintaining a negligence action against the cemetery. Plaintiff was an employee of both the State of Michigan and the cemetery.

Affirmed.

WORKERS' COMPENSATION — ECONOMIC REALITIES TEST.

The issue of whether employment exists for purposes of applying

REFERENCES

Am Jur 2d, Workmens' Compensation §§ 96 *et seq.*

See the annotations in the Index to Annotations under Workers' Compensation.

the exclusive remedy provision of the Workers' Disability Compensation Act is resolved by applying an economic reality test; the test looks to the totality of the circumstances surrounding the performed work, including control over the worker, payment of wages, hiring and firing, and the responsibility for the maintenance of discipline; under the test, a worker may have more than one employer for purposes of the exclusive remedy provision (MCL 418.131; MSA 17.237[131]).

*Randolph McCarthy, Jr., P.C.* (by *Kenneth Kobayashi*), for plaintiff.

*Straub, Seaman & Allen, P.C.* (by *Douglas C. Allen*), for City of Benton Harbor.

Before: MacKenzie, P.J., and T. M. Burns and P. R. Joslyn,* JJ.

Per Curiam. Plaintiff appeals as of right from an order of the trial court granting defendant cemetery's motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

Plaintiff, a general assistance recipient, is a participant in the Department of Social Services' Community Work Experience Program, commonly referred to as "work fare." Under the program, employable general assistance recipients are required to work on a work relief or work training project in return for assistance given. See MCL 400.55a(1)(d); MSA 16.455(1)(1)(d). The DSS matches program participants to interested work sites, calculates the number of hours per month each participant must work, and sends them to the worksite to work under the direction of worksite personnel. Participants do not receive "wages" from either the worksite or DSS; instead, they receive a continued general assistance grant from the state. MCL 400.55a(2); MSA 16.455(1)(2).

In April, 1982, plaintiff was assigned by DSS to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

report for work at defendant cemetery where his primary job duty was grounds maintenance. While working at the cemetery in July, 1982, plaintiff was injured when a trailer in which he was riding overturned. Apparently plaintiff applied for and received workers' compensation benefits from State of Michigan.

Plaintiff commenced the instant negligence action in February, 1984, against defendant Steven Strouse (driver of the tractor pulling the trailer from which plaintiff fell), defendants Southwestern Wilbert Corporation and Robert Strouse (the burial vault company which employed Steven Strouse and the company's owner), and defendant cemetery. All defendants filed motions for summary disposition on the basis that plaintiff was injured while in the course and scope of his employment and that the exclusive remedy provision of the Workers' Disability Compensation Act, MCL 418.101 et seq.; MSA 17.237(101) et seq., barred plaintiff's claims. The motions were initially denied. Defendants renewed their motions following extensive discovery. The trial court again denied the motions of defendants Steven Strouse, Robert Strouse, and Southwestern Wilbert. The court, however, granted defendant cemetery's motion, ruling that it was plaintiff's employer at the time of the accident and was therefore barred from suit under the exclusive remedy provision of the Workers' Disability Compensation Act. Plaintiff subsequently settled with the remaining defendants.

It is undisputed that plaintiff, as a "work fare" participant, is entitled to workers' compensation benefits. See MCL 400.55a(1)(d); MSA 16.455(1)(1)(d). It is also apparently undisputed that plaintiff received such benefits from the State of Michigan. The sole issue on appeal is whether the trial court erred in ruling that defendant

cemetery was an "employer" of plaintiff for purposes of the Workers' Disability Compensation Act, so that plaintiff was barred by the exclusive remedy provision of the act from maintaining a negligence action against the cemetery. We find no error.

The exclusive remedy provision provides that "[t]he right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer." MCL 418.131; MSA 17.237(131). The issue of whether employment exists for purposes of this statute is resolved by applying an economic reality test. See, e.g., *Renfroe v Higgins Rack Coating & Mfg Co, Inc,* 17 Mich App 259; 169 NW2d 326 (1969); *Farrell v Dearborn Mfg Co,* 416 Mich 267; 330 NW2d 397 (1982). This test looks to the totality of the circumstances surrounding the performed work, including control over the worker, payment of wages, hiring and firing, and the responsibility for the maintenance of discipline. *Farrell, supra,* p 276. Under the test, a worker may have more than one "employer" for purposes of the exclusive remedy provision. See *Renfroe, supra.*

In this case, DSS contacted the cemetery to determine if there was an interest in engaging the services of "work fare" participants. The cemetery responded affirmatively and described the work such participants would perform. Dss then assigned plaintiff to the cemetery worksite on the basis of his employment experience and geographical proximity to the work site, and calculated the number of hours plaintiff would be required to work there. Defendant cemetery directly supervised plaintiff's work, scheduled his work hours, assigned him to particular work areas, and instructed plaintiff as to how his work was expected to be done. The cemetery was responsible for

monitoring plaintiff's work hours and reporting them to DSS. Work materials and equipment were provided by the cemetery. The cemetery could discipline plaintiff and could discharge him from further duties if dissatisfied with his performance. A DSS employee "inspected" the worksite approximately once a month. As noted above, plaintiff received no "wages" either from DSS or from defendant cemetery.

Plaintiff contends that, applying the economic reality test to these facts, it must be concluded that the State of Michigan was his employer. We are of the opinion instead that plaintiff was an employee of both the State of Michigan and defendant cemetery. Both DSS and defendant cemetery controlled plaintiff and both were involved in his hiring and firing. Dss assigned him to a particular worksite, set the number of hours he was required to work, and authorized his continued receipt of general assistance; defendant cemetery directed plaintiff's day-to-day work, scheduled his hours, provided his equipment, and could discipline if necessary. Defendant cemetery had the power to fire plaintiff; DSS "hired" him in the sense of selecting him to report to any given worksite. Both DSS and defendant cemetery were responsible for paperwork associated with plaintiff's work: defendant cemetery kept a time sheet, while DSS maintained his case file and was responsible for his accident report. For plaintiff, the economic reality was that he had to satisfy the requirements of both DSS and defendant cemetery in order to remain constantly eligible for his general assistance grant, and that with the aid of both entities he could become more employable. For DSS, the economic reality is based on the fact that it authorized payment incident to the employment, handled the majority of the paperwork, and by moni-

toring plaintiff's participation in the program increased the possibility of removing him from the general assistance rolls. Defendant cemetery, in turn, received a worker who it could and did direct among its various tasks.

We believe our conclusion that plaintiff was an employee of both the state and defendant cemetery is consistent with *Renfroe* and *Farrell, supra,* where this Court and our Supreme Court applied the economic reality test in the context of labor brokers. A labor broker is a business which supplies temporary workers to various companies or customers. The customers call in to the labor broker their employment needs and temporary workers are sent by the broker to fill these needs. After arriving at the customer's place of business, the worker is subject to the control and authority of the customer. The broker pays the employee. In both *Renfroe* and *Farrell,* it was held that a worker who is injured while performing duties for the customer could not maintain a tort action against the customer. The *Renfroe* Court stated:

> The economic reality of this case is that both [the labor broker] and [the customer] were employers of [the worker], each in a different way. It is not necessary to make fine semantic distinctions as to types of degrees of control, *et cetera.* It is enough to say that either could be liable under the workmen's compensation act, therefore, both are protected by it. [17 Mich App 266-267.]

The *Farrell* Court adopted the reasoning of *Renfroe* and stated:

> It is argued that the labor broker situation, the exclusive remedy provision should not automatically preclude a cause of action against the com-

pany or owner of the premises at which the injury took place because the conditions of liability as expressed in the statute do not exist.

\* \* \*

To conclude that an individual so employed is outside the scope of the exclusive remedy provision would clearly disregard the overall objectives of the statutory scheme.

We therefore hold that the exclusive remedy available to the employee in a labor broker situation is provided by the workers' compensation statute and that a separate tort action against the customer of the labor broker may not be maintained. [416 Mich 275, 277-278.]

The trial court did not err in determining that plaintiff's negligence action against defendant cemetery was barred by the exclusive remedy provision.

Affirmed.