**Martin and Victoria SIMESCU,
Individually; et al.,
Plaintiffs,**

Martin and Victoria Simescu, Individually; Martin Simescu, as next friend for Anna Simescu and Emily Simescu; Mary Ann Tuschak, individually and as next friend for Matthew Tuschak Bondy; Michael and Lizabeth Compton, individually; Michael Compton, as next friend for Benjamin Compton; Candy and Robert Newton, individually; Candy Newton, as next friend for Shayla Newton; Plaintiffs–Appellants,

v.

**EMMET COUNTY DEPARTMENT OF SOCIAL SERVICES, a unit of government of the County of Emmet; et al., Defendants,**

Women's Resource Center of Northern Michigan, Inc., a not-for-profit corporation; the Children's Learning Center, a not-for-profit business operated by the Women's Resource Center of Northern Michigan; Janet M. Mancinelli; Nancy Decker; Sheryl Brown; North Central Michigan College, a public corporation, Defendants–Appellees.

Nos. 89–1180, 89–1181.

United States Court of Appeals,
Sixth Circuit.

Argued March 14, 1991.

Decided Aug. 19, 1991.

Grant W. Parsons (argued), Dettmer, Thompson & Parsons, Traverse City, Mich., for plaintiffs-appellants.

Janet G. Callahan (argued), Roger F. Wardle, Kohl, Secrest, Wardle, Lynch, Clark & Hampton, Farmington Hills, Mich., for defendants-appellees.

Donald S. McGehee, Tort Defense Div., Vincent J. Leone, Becky M. Lamiman, Asst. Attys. Gen., Office of the Atty. Gen., Habeas Div., Lansing, Mich., for defendants.

Before KEITH and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This 42 U.S.C. § 1983 case arises from the sexual abuse of children by a general assistance recipient who worked at a daycare center through a state "workfare" program. The district court granted summary judgment in favor of Appellee Women's Resource Center (WRC) based on the conclusions that WRC's actions were neither state action nor grossly negligent. For the reasons stated below, we affirm.

**FACTS**

In 1983, Terry Miller was a recipient of financial assistance from the state of Michigan and a participant in the Department of Social Services' Community Work Experience Program (CWEP). Under the CWEP, employable recipients of general assistance or Aid to Dependent Children were required to work for public or private non-profit agencies in exchange for their benefits. Under the CWEP worksite agreement, the Department of Social Services stated that it would "attempt to provide the CWEP agency with clients who have been screened to the specified requirements of the CWEP agency." The CWEP agency was free to select or reject participants referred by the Department. The agency agreed to provide supervision and training to the program participants selected.

Appellee WRC is a private non-profit corporation that operates a daycare facility, the Children's Learning Center (CLC). Miller was placed at the CLC through the CWEP. While Miller worked at the CLC, Protective Services employees for the Department of Social Services (DSS) saw him there, and informed the WRC director that Miller's children had been removed from his home on more than one occasion for child neglect. Additionally, in April 1983, Miller's wife and children had taken refuge at the WRC's safe house due to verbal abuse by Miller. In 1985, Miller was accused of sexually molesting several of the children at the CLC. Miller was convicted of first and second degree criminal sexual conduct and sentenced to life imprisonment.

The children and their parents brought § 1983 and state claims against numerous defendants including the DSS, its director, the CLC and its directors and teachers, and the WRC and its director. All defendants filed motions to dismiss and/or for summary judgment. The district court granted the motions with regard to the § 1983 claims. This appeal followed. During the pendency of the appeal, all defendants except the WRC reached a settlement agreement with Appellants.

STANDARD OF REVIEW

This court's review of a grant of summary judgment is *de novo*. *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is mandated against a party who:

> fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

ANALYSIS

■ 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A § 1983 claim must embody at least two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir.1987) (to sustain a § 1983 claim, plaintiffs must show that: 1) the conduct at issue was under color of state law; 2) the conduct caused a deprivation of constitutional rights; and 3) the deprivation occurred without due process of law).

On appeal, Appellants urge that the district court erred in resolving certain disputed facts in favor of the WRC and in concluding that the WRC was not acting under color of state law. We will address the second assignment of error first because Appellants' failure to show an essential element of their case will render any factual disputes immaterial. *Celotex, supra.*

■ WRC is a private, non-profit corporation. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The actions of private individuals may be under color of state law when "significant state involvement attaches to the action." *Wagner v. Metropolitan Nashville Airport Authority*, 772 F.2d 227, 229 (6th Cir.1985). The required nexus between the State and the private party may be shown where the State has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982).

Appellants argue that WRC's participation in the state CWEP program provides the "significant state involvement" that exposes private actors to liability under § 1983. Appellants note that the DSS and WRC had a contractual relationship under the CWEP worksite agreement. Appellants contend that Miller was a dual employee of the State and the CLC. *Arntz v. Southwestern Wilbert Corp.*, 156 Mich.

App. 309, 401 N.W.2d 358 (1986) (CWEP worker was an employee of the State and his private employer for the purpose of determining if workers' compensation was his exclusive remedy for a job-related injury). Appellants urge that the State purpose of training recipients and providing work experience for welfare recipients could only be achieved through joint action with WRC. Appellants note that WRC's daycare center was operated in a public college and was a highly state-regulated field. Thus, Appellants conclude that WRC should be liable under § 1983. We disagree.

The mere existence of a contract between a governmental agency and a private party is insufficient to create state action. *Dobyns v. E–Systems, Inc.*, 667 F.2d 1219, 1227 (5th Cir.1982). Furthermore, under the contract, the WRC was free to select or reject participants from those referred by the DSS. Thus, the State does not seem to have exercised coercive power or provided such encouragement that the decision to use Miller must be deemed that of the State. *Blum, supra*. Furthermore, we do not find the state court's finding that a CWEP worker is a dual employee for purposes of workers' compensation to be relevant to the issue at bar. Additionally, the "mere fact that a business is subject to state regulation does not by itself convert its action into that of the State." *Bier v. Fleming*, 717 F.2d 308, 311 (6th Cir.), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). The fact that the daycare center leased space from a public college also does not transform its actions into those of the State. *Wagner, supra*, at 229 (fact that airport authority, a state entity, leased space to airline whose security service had searched passenger did not provide necessary nexus to bring action under state control). Thus, examining the above factors individually and in the aggregate, we conclude that the district court correctly concluded that WRC was not acting under color of state law. Therefore,

Appellants have failed to make a showing of an essential element of their § 1983 claim and it must fail. Although this conclusion is enough under *Celotex, supra*, to bring our inquiry to a close, we note that the district court alternatively concluded that even if WRC's actions could be construed to be under color of state law, its actions do not represent the requisite level of negligence to invoke liability under § 1983. We will deal with this issue briefly.

In *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 282 (6th Cir.1987), this court held that while simple negligence could not constitute a deprivation within the meaning of the Due Process Clause, gross negligence was sufficient to charge the defendants with arbitrary use of government power. Gross negligence sufficient to trigger a § 1983 claim occurs when a person "intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow." *Id.*

Appellants note that the directors of the CLC and WRC were aware during the time that Miller worked at the CLC that his children had been removed from his home for neglect on more than one occasion. The reports filed in connection with the removal of Miller's children revealed that the house was filthy. Open containers of spoiled food, garbage, and soiled diapers were strewn about the house. The odor of urine and feces pervaded many areas in the house. The Miller children were poorly clothed and dirty. While these reports justify charges of child neglect, they do not evince physical or sexual abuse of the children.

At oral argument, Appellants' attorney stated that there was evidence that Miller's children also had been physically abused. The record before this court contains only one document that could be suggestive of such abuse. It is a medical report on one of Miller's children that includes in the diagnosis a well-healed scar on the lower back and old ecchymosis, the escape of

blood into body tissue from ruptured blood vessels. While these conditions may be indicative of some kind of trauma, it would be mere speculation to infer physical abuse. Even if abuse could be inferred, there is no evidence in the record that WRC or CLC personnel had any knowledge of the medical report. It is undisputed that the directors of the WRC and CLC were aware of the removal of Miller's children for neglect. However both women stated that they understood the neglect to primarily involve Mrs. Miller for poor housekeeping. While the WRC may have been negligent in hiring or retaining Miller knowing about the conditions in his home, a reasonable jury could not find that it rises to the level of an unreasonable act that disregards a known risk and from which it is highly probable that harm will follow. *Nishiyama, supra.* Accordingly, we affirm the district court's grant of summary judgment to WRC.