MEYERHOFF v TURNER CONSTRUCTION COMPANY

Docket No. 133316. Submitted October 6, 1992, at Detroit. Decided November 15, 1993, at 10:00 A.M. Leave to appeal sought.

Ronald M. Meyerhoff and twenty other construction workers brought an action in the Wayne Circuit Court against Turner Construction Company, Zebrowski & Associates, Incorporated of Texas, and the City of Detroit, alleging exposure to asbestos in the course of their employment while working on the City of Detroit's Cobo Hall expansion project and seeking damages for medical monitoring or surveillance, emotional distress due to the fear of contracting cancer, and their increased risk of contracting cancer. The plaintiffs had not yet suffered any identifiable physical injuries resulting from the alleged exposure. The court, James E. Mies, J., granted summary disposition for the defendants on the basis that the plaintiffs did not allege an underlying injury. The plaintiffs appealed.

The Court of Appeals *held:*

1. The court erred in holding that an underlying injury or manifestation of disease must exist before the plaintiffs may advance a claim for medical monitoring damages. Medical monitoring expenses are a compensable item of damages where the proofs demonstrate that such monitoring of the effect of exposure to toxic substances is reasonable and necessary.

2. The factors that must be considered in determining whether medical monitoring damages are reasonable and necessary are: the significance and extent of the exposure; the toxicity of the substance; the seriousness of the diseases for which individuals are at risk; the relative increase in the chance of onset of disease in those exposed; and the value of early diagnosis. The need for medical diagnostic examinations must be supported by competent, reliable expert testimony.

3. Even if Michigan courts may recognize a cause of action for emotional distress resulting from a fear of contracting cancer, the plaintiffs presently cannot succeed on their claim for emotional distress due to the fear of contracting cancer

REFERENCES

Am Jur 2d, Damages §§ 207, 213.

See ALR Index under Damages; Medical Expenses.

because they have not alleged that their emotional distress has manifested itself in a definite and objective physical injury. The trial court did not err in granting summary disposition with regard to this part of the plaintiffs' action. The plaintiffs must be given an opportunity on remand to amend their complaint to state a claim for emotional distress due to the fear of contracting cancer, unless the trial court determines that such an amendment would be futile.

Affirmed in part, reversed in part, and remanded.

R. R. LAMB, J., concurring in part and dissenting in part, stated that, to the extent that there is an employment relationship, the plaintiffs' tort claims of negligent infliction of emotional distress due to any alleged asbestos exposure would be barred by the exclusive remedy provision of the Workers' Disability Compensation Act, MCL 418.131; MSA 17.237(131). Thus, to that extent, the plaintiffs' claims of negligent infliction of emotional distress should not succeed even upon a stronger showing of physical injury. The case must be remanded to the trial court for a determination regarding the necessity of medical monitoring for the plaintiffs and for the trial court to explore the necessity of medical monitoring for all of Michigan jurisprudence.

1. TORTS — DAMAGES — MEDICAL MONITORING EXPENSES.

Medical monitoring expenses are a compensable item of damages where the proofs demonstrate that monitoring of the effect of exposure to toxic substances is reasonable and necessary; a plaintiff need not exhibit symptoms of a disease, nor is physical injury required, before a claim for medical monitoring expenses may be maintained.

2. TORTS — DAMAGES — MEDICAL MONITORING EXPENSES.

The factors that must be considered in determining whether damages for medical monitoring expenses are reasonable and necessary are the significance and extent of the exposure, the toxicity of the substance, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis; the need for medical diagnostic examinations must be supported by competent, reliable expert testimony.

*Chambers, Steiner, Mazur, Ornstein & Amlin, P.C. (by Angela J. Nicita), for the plaintiffs.*

*Plunkett & Cooney, P.C. (by Robert G. Kamenec*

and *Mary Massaron Ross*), for Turner Construction Company.

*Donald Pailen,* Corporation Counsel, *Lesley F. Knapp,* Acting Supervising Assistant Corporation Counsel, and *Sheri L. Whyte,* Assistant Corporation Counsel, for the City of Detroit.

Before: SULLIVAN, P.J., and JANSEN and R. R. LAMB,* JJ.

JANSEN, J. Plaintiffs are twenty-one construction workers who allege that they were exposed to asbestos and asbestos-containing products from February 1987 through April 1988 in the course of their employment while working on the City of Detroit's Cobo Hall expansion project. Although plaintiffs have not suffered any presently identifiable physical injuries resulting from the alleged exposure, they brought suit against defendants seeking damages for medical monitoring or surveillance, emotional distress due to the fear of contracting cancer, and their increased risk of contracting cancer.

Defendants moved for summary disposition, alleging that plaintiffs failed to state a claim upon which relief could be granted. MCR 2.116(C)(8). The trial court granted defendants' motion on the basis that plaintiffs did not allege an underlying injury. The court stated that "inasmuch as there is no allegation that they [plaintiffs] have an injury now, I feel that their claim is premature." The trial court entered an order on September 10, 1990, granting defendants' motion for summary disposition. Plaintiffs appeal as of right from the trial court's September 10, 1990, order. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

* Circuit judge, sitting on the Court of Appeals by assignment.

Plaintiffs first claim that the trial court erred in granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(8), because they stated a legally cognizable claim seeking damages for medical monitoring in order to detect and seek early treatment of asbestos-related diseases. Specifically, plaintiffs claim that they face an increased risk of contracting cancer because of their exposure to asbestos and that they will need to undergo periodic medical testing in order to detect any signs of cancer as early as possible, thereby improving their chances of survival should they contract cancer.

A motion under MCR 2.116(C)(8) tests the legal basis for the complaint. *Ashley v Bronson,* 189 Mich App 498, 501; 473 NW2d 757 (1991). The court must accept as true all well-pleaded factual allegations, as well as any conclusions that can reasonably be drawn therefrom. *Id.* The court may grant the motion only when the claim, on the pleadings alone, is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery. *Id.*

In ruling on defendants' motion, the trial court stated that "there needs to be some kind of an actionable injury before you get medical monitoring" damages. The court was of the opinion that there must exist some underlying injury or manifestation of disease in order to advance a claim for medical monitoring damages. We disagree with the trial court's conclusion. Because this question presents an issue of first impression in Michigan, we turn for guidance to other jurisdictions that have addressed this issue.

Medical monitoring is one of a growing number of nontraditional torts that have developed in the common law to compensate plaintiffs who have been exposed to various toxic substances. *In re*

*Paoli Railroad Yard PCB Litigation,* 916 F2d 829, 849 (CA 3, 1990). Often, the diseases or injuries caused by this exposure are latent. *Id.,* pp 849-850. A claim for medical monitoring expenses seeks to recover the cost of periodic medical examinations intended to monitor the plaintiffs' health and facilitate early diagnosis and treatment of diseases caused by the plaintiffs' exposure to toxic substances. *Ayers v Jackson Twp,* 106 NJ 557, 599; 525 A2d 287 (1987). Therefore, an action for medical monitoring expenses seeks to recover only the quantifiable costs of periodic medical examinations necessary to detect the onset of physical harm. *Paoli,* p 850; *Mauro v Raymark Industries, Inc,* 116 NJ 126, 136; 561 A2d 257 (1989).

In *Friends For All Children, Inc v Lockheed Aircraft Corp,* 241 US App DC 83, 93; 746 F2d 816 (1984), the court, quoting from 1 Restatement Torts, 2d, § 7, p 12 defined injury as " 'the invasion of any legally protected interest of another.' " See also *Ayers, supra,* p 601. The court in *Friends,* p 93, held that a reasonable need for medical examinations is itself compensable without proof of other injury:

> It is difficult to dispute that an individual has an interest in avoiding expensive diagnostic examinations just as he or she has an interest in avoiding physical injury. When a defendant negligently invades this interest, the injury to which is neither speculative nor resistant to proof, it is elementary that the defendant should make the plaintiff whole by paying for the examinations.

See *Ayers,* pp 601-602.

Similarly, as the court held in *Paoli, supra,* p 852, a plaintiff need not exhibit symptoms of a disease, nor is a physical injury required, before a claim for medical monitoring can be maintained.

Therefore, we find error to the extent that the trial court in the present case required the presence of an underlying injury or manifestation of disease before recognizing a claim for medical monitoring damages.

There exists a number of policy reasons for recognizing a claim for medical monitoring damages. "Medical monitoring claims acknowledge that, in a toxic age, significant harm can be done to an individual by a tortfeasor, notwithstanding latent manifestation of that harm." *Id.*, p 852. Recognizing this tort does not require courts to speculate about the probability of future injury; rather, it merely requires courts to ascertain the probability that the less costly remedy of medical supervision is appropriate. *Id.* Allowing plaintiffs to recover medical monitoring expenses deters the irresponsible discharge of toxic substances by defendants and encourages plaintiffs to detect and treat their injuries as soon as possible. *Id.* See also *Ayers, supra,* p 603 (compensation for reasonable and necessary medical expenses is consistent with the important public health interest in fostering access to medical testing for individuals whose exposure to toxic substances creates an enhanced risk of disease); *Askey v Occidental Chemical Corp,* 102 AD2d 130, 137; 477 NYS2d 242 (1984) (such a remedy would permit the early detection and treatment of maladies and, as a matter of public policy, the tortfeasor should bear the cost).

Permitting recovery for reasonable presymptom medical monitoring expenses subjects defendants to significant liability when proof of the causal connection between the tortious conduct and plaintiffs' exposure is likely to be most readily available. *Ayers, supra,* p 604. Another consideration compelling recognition of a presymptom medical monitoring claim is that it is inequitable for an

individual, wrongfully exposed to dangerous toxic substances but unable to prove that disease is likely, to have to pay the expense of medical intervention that is clearly reasonable and necessary. *Id.,* pp 604-605.

Accordingly, we hold that medical monitoring expenses are a compensable item of damages where the proofs demonstrate that such surveillance to monitor the effect of exposure to toxic substances, such as asbestos, is reasonable and necessary. *Id.,* p 606; *Mauro, supra,* pp 136-137. In determining whether such medical monitoring damages are reasonable and necessary, the following factors must be considered: the significance and extent of the exposure; the toxicity of the substance; the seriousness of the diseases for which individuals are at risk; the relative increase in the chance of onset of disease in those exposed; and the value of early diagnosis. *Ayers, supra,* p 606; *Mauro, supra,* pp 136-137. The need for medical diagnostic examinations must be supported by competent, reliable expert testimony. *Ayers, supra,* p 606; *Mauro, supra,* p 136; *Friends, supra,* p 93, n 15.

In light of the above holding that medical monitoring constitutes a viable legal claim, plaintiffs have stated a claim upon which relief may be granted. The trial court, therefore, erred in granting defendants' motion for summary disposition on the basis that plaintiffs failed to allege an underlying injury or some manifestation of disease. Such an allegation was not required.

Plaintiffs also claim that the trial court erred in granting defendants' motion for summary disposition of their claim for damages resulting from emotional distress due to their fear of contracting cancer in the future. In ruling on defendants' motion, the trial court stated that "the fear of

cancer is a viable claim in my judgment as long as there is some underlying injury." The court then acknowledged that plaintiffs do not have any manifestation of underlying injury.

In applying Michigan law, the court in *Stites v Sundstrand Heat Transfer, Inc,* 660 F Supp 1516 (WD Mich, 1987), addressed the plaintiffs' claim based on fear of cancer, stating as follows:

> Under [*Daley v LaCroix,* 384 Mich 4; 179 NW2d 390 (1970)], plaintiffs can recover for physical injury "produced as a result of emotional distress proximately caused by defendant's negligent conduct" if such injury is "definite and objective." To recover on their fear of cancer claim, plaintiffs must establish (1) that they have suffered emotional distress as a proximate result of defendant's negligent conduct; (2) that this emotional distress has manifested itself in definite and objective physical injury; and (3) that their emotional distress is not "about a completely fictitious, vague, fanciful or imagined consequence, having no reasonable basis." [*Stites, supra,* p 1526; citations omitted.]

The *Stites* court noted that Michigan courts are very lenient in finding allegations of physical harm sufficient to satisfy the "definite and objective physical injury" standard. *Id.,* p 1527. Although general claims of physical distress, pain, and suffering are insufficient, in *Daley,* the Michigan Supreme Court indicated that a plaintiff's burden in this regard is minimal. *Daley, supra,* p 15; *Stites, supra,* p 1527. *Daley* indicated that claims of nervousness may satisfy the physical injury requirement. *Id.,* p 15.

Assuming, without deciding, that the state courts in Michigan would recognize a cause of action for emotional distress resulting from a fear of cancer, we are of the opinion that plaintiffs

presently cannot succeed on this claim. We reach this conclusion in light of the fact that plaintiffs have not alleged that their emotional distress has manifested itself in a definite and objective physical injury. *Stites, supra,* p 1526; *Daley, supra,* p 12. In fact, plaintiffs admit in their brief on appeal that "there is no claim by plaintiffs that they have as yet suffered any objective physical injury due to their fear of cancer."

Plaintiffs further contend that they alleged that defendants deliberately and intentionally exposed them to a highly toxic substance, asbestos, and therefore that they have stated a viable claim of intentional infliction of emotional distress due to their fear of contracting cancer. Plaintiffs did not raise the claim of intentional infliction of emotional distress resulting from a fear of cancer in response to defendants' motion for summary disposition, nor did the trial court address the issue. An issue not raised before and considered by the trial court is not preserved for appellate review. *Adam v Sylvan Glynn Golf Course,* 197 Mich App 95, 98; 494 NW2d 791 (1992).

In any event, we find plaintiffs' complaint to be lacking in material allegations. While plaintiffs allege that defendants' deliberate and intentional conduct resulted in emotional distress due to the fear of contracting cancer, they do not allege what emotional reactions they suffered from or whether such emotional distress is in fact severe and extreme. *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 608-609; 374 NW2d 905 (1985).

It is our opinion, given the above holdings, that the trial court did not err in granting defendants' motion for summary disposition of plaintiffs' claim for emotional distress due to the fear of contracting cancer. On remand, however, plaintiffs shall be given an opportunity to amend their complaint to

state a claim for emotional distress due to the fear of contracting cancer, unless the trial court determines that such an amendment would be futile. MCR 2.118(A)(2).

We affirm in part, reverse in part, and remand the case to the trial court for further proceedings consistent with this opinion.

Sullivan, P.J., concurred.

R. R. Lamb, J. *(concurring in part and dissenting in part).* While I agree with the majority in remanding this case, I believe that the theory of medical monitoring must be very narrowly drawn —and, if recognized, it should be on a more clearly deserving record. I also have some reservations regarding plaintiffs' claims for emotional damages.

The cases from other jurisdictions cited by the majority in support of medical monitoring are fact-specific, and involved exposures to hazardous substances of great duration, *Mauro v Raymark Industries, Inc,* 116 NJ 126; 561 A2d 257 (1989), and intensity, *Ayers v Jackson Twp,* 106 NJ 557; 525 A2d 287 (1987); *In re Paoli Railroad Yard PCB Litigation,* 916 F2d 829 (CA 3, 1990). In some cases, there was evidence that the exposures to the hazardous substances occurred in violation of established environmental regulations. *Ayers, supra.*

In the case at bar, the limited record tends to demonstrate that defendants may have complied with the applicable rules and regulations governing asbestos removal. And, at this stage of the proceedings, the actual extent of the plaintiffs' exposure to asbestos is uncertain. There is a serious question whether plaintiffs will be able to establish a claim for reasonable and necessary medical monitoring expenses under the five factors outlined in *Ayers, supra,* as adopted by the major-

ity. Only because this action has come to this Court following a grant of summary disposition pursuant to MCR 2.116(C)(8) do I entertain the legal sufficiency of plaintiffs' claims.[1] *Feister v Bosack,* 198 Mich App 19, 21; 497 NW2d 522 (1993).

An important issue not addressed by the majority, nor apparently the trial court below, is the effect of the Workers' Disability Compensation

---

[1] The trial court granted summary disposition pursuant to MCR 2.116(C)(8), but added that "I guess this might have some aspect of the (C)(10) motion . . . ." Although there had been no discovery, the following discourse took place during the hearing regarding the motion for summary disposition:

*The Court:* The latency, the fact that there isn't any real treatment for asbestosis. There isn't any cure. If I know today that I am going to get it five years from now, there isn't anything that I can do that I am going to prevent it. So, monitoring isn't going to be helpful.

And also, I guess the Supreme Court is aware of this because they comment upon it in *Larson* [v *Johns-Manville Sales Corp,* 427 Mich 301; 399 NW2d 1 (1986)] that it is not more likely than not just because you are exposed to asbestos, you are going to get lung cancer.

Those are the things that I think are factual kinds of things. And somebody that has never been involved in an asbestos case will say you have got to take some depositions. You have got to have some doctors come in and tell us all of that stuff. But everybody in this room who has been involved in asbestos litigation knows all of those facts.

*[Plaintiffs'] Counsel:* Just one more thing. So those facts, I don't have a problem with this. But if the Court of Appeals reads *Larson* and thinks you are taking the allegations in the complaint as true.

*The Court:* I am taking the allegation in the complaint as true. And inasmuch as there is no allegation that they have an injury now, I feel that their claim is premature.

Even if the trial court's decision was partially based upon MCR 2.116(C)(10), it would appear from the above excerpt that any "known" facts were analyzed under the prospective damage theory discussed in *Larson, supra* at 317-318, and not medical monitoring, which does not require a "reasonable certainty" of developing future complications. Although the record is unclear, it may be at this juncture that the trial court erred in using the standard from *Larson* to analyze the necessity for medical monitoring, because *Larson* does not discuss medical monitoring. Thus, regarding the medical monitoring claim itself, we are squarely faced with a question of law pursuant to MCR 2.116(C)(8).

Act, MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.,*
upon the claims by plaintiffs against their employ-
ers. Plaintiffs' amended complaint alleges that the
City of Detroit retained control of the work prem-
ises along with the other defendants. Thus, it
would appear that all defendants should be consid-
ered coemployers for purposes of workers' compen-
sation under the "economic reality" test. See
*Arntz v Southwestern Wilbert Corp,* 156 Mich App
309, 313; 401 NW2d 358 (1986). Depending upon
which party the individual plaintiffs worked for, it
would appear that some, if not all, of the plaintiffs
are essentially suing their employers.

Accordingly, to the extent that there is an em-
ployment relationship, plaintiffs' tort claims of
negligent infliction of emotional distress due to
any alleged asbestos exposure would be barred by
the exclusive remedy provision of the Workers'
Disability Compensation Act, MCL 418.131; MSA
17.237(131). See *Beauchamp v Dow Chemical Co,*
427 Mich 1, 27; 398 NW2d 882 (1986); *Bachula v
General Motors Corp,* 191 Mich App 193, 194; 477
NW2d 486 (1991); *Bach v Flint Bd of Ed,* 197 Mich
App 247, 250; 494 NW2d 815 (1992). In this respect
I disagree with the majority's analysis that plain-
tiffs' claims of negligent infliction of emotional
distress might have succeeded upon a stronger
showing of physical injury.

Although plaintiffs' claims of intentional inflic-
tion of emotional distress may fall outside the
exclusive remedy provision, it would seem almost
impossible to establish an "intentional" injury if
defendants have in fact complied with the applica-
ble safety rules governing asbestos removal. See
*Oaks v Twin City Foods, Inc,* 198 Mich App 296,
297; 497 NW2d 196 (1993). Here, the relevant
inquiry would be whether—having followed the
applicable regulations for asbestos removal—the

defendants had "actual knowledge that an injury was certain to occur and wilfully disregarded that knowledge." *Id.* Thus, under certain circumstances, it would seem contrary to public policy to allow such a claim of intentional infliction of emotional distress.

Additionally, for some of the plaintiffs, their medical monitoring claims may be precluded by the exclusive remedy provision of the workers' compensation act. While the theory of medical monitoring is certainly a novel one to Michigan jurisprudence and does not fit the traditional definition of a "personal injury" or "occupational disease" compensable under workers' compensation, MCL 418.401; MSA 17.237(401), there remains the question whether the exclusive remedy provision should deny an independent tort action for medical monitoring expenses. The difficulty is that medical monitoring is not an occupational disease per se, but rather attempts to predict and diagnose the onset of a disease.

One approach would be to allow medical monitoring as an independent tort where medical monitoring expenses are not covered by workers' compensation. This was the approach taken by the Supreme Court of New York County in *Acevedo v Consolidated Edison Co,* 151 Misc 2d 347, 350; 572 NYS2d 1015 (1991) (cited in plaintiffs' supplemental brief), before it was modified by the appellate division, 189 AD2d 497; 596 NYS2d 68 (1993). This is also the approach taken by the majority.

Another approach favoring a broad interpretation of the exclusivity provision might exclude an independent tort action even though the particular work-related "injury" is not compensable under workers' compensation. See *Cole v Dow Chemical Co,* 112 Mich App 198; 315 NW2d 565 (1982) (holding that claims in tort for the employees'

sterility were precluded by the exclusive remedy provision of the workers' compensation act); see also *Acevedo, supra,* 596 NYS2d 68, 71 (1993) (holding that medical monitoring claims in tort following exposure to asbestos were precluded by the exclusive remedy provision of the workers' compensation act).

Under a third approach, the Legislature might attempt to incorporate medical monitoring into the current workers' compensation scheme. In this manner, medical monitoring funds could be allocated as part of a more comprehensive plan in an attempt to minimize total costs. For example—among the numerous factors to be weighed—the "cost-benefits" of early diagnosis could be balanced against the current demands of those patients in the advanced stages of asbestos-related diseases.[2]

If defendants have in fact complied with all the applicable rules and regulations that presumably have been formulated to ensure the safe removal of asbestos, should defendants still be required to defend against claims for emotional distress and medical monitoring? While the majority has addressed a number of other public policy concerns, this particular concern was not among them. Rather than attempt to answer these questions on the basis of the sketchy record on appeal, I feel that many of the complex public policy questions surrounding the issue of medical monitoring may be best left for the Legislature to decide.

In summary, I respectfully dissent from that portion of the majority's opinion that suggests that similar plaintiffs could recover for negligent infliction of emotion distress upon a stronger showing

---

[2] Similarly, but not precisely on point, our Supreme Court emphasized in *Larson, supra* at 319, the importance of compensating those who have already developed asbestos-related cancers over those merely alleging speculative future damages.

of physical injury. It appears that, at least for some of the plaintiffs, such a claim would be barred by the exclusive remedy provision of the Workers' Disability Compensation Act. Although I concur with the decision to remand, I also question plaintiffs' theory of intentional infliction of emotional distress—especially if defendants have complied with current regulations governing asbestos removal. With regard to the issue of medical monitoring, I concur so that this case may be remanded to the trial court to explore the necessity of medical monitoring for these particular plaintiffs. However, I would also remand the case to the trial court to explore the necessity of medical monitoring for all of Michigan jurisprudence. To say the least, the posture of this case—arising from a grant of summary disposition pursuant to MCR 2.116(C)(8) before any discovery has taken place—is somewhat less than ideal for recognizing an entirely new tort theory.