**Victor MALDONADO and Dawn Maldonado, Plaintiffs–Appellants,**

v.

**NATIONAL ACME COMPANY, individually and doing business as Acme–Gridley Company, an Ohio Corporation, Defendant–Appellee.**

No. 94–1494.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1995.

Decided Jan. 17, 1996.

P. Robert Shrauger (briefed), Richard Welke (argued), Shrauger, Dunn & Aronson, Detroit, MI, for plaintiffs-appellants.

Richard B. Poling, Jr. (briefed and argued), Poling, McGaw & Poling, Troy, MI, for defendant-appellee.

Before: SILER and MOORE, Circuit Judges; FORESTER, District Judge.*

---

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

SILER, Circuit Judge.

Victor Maldonado, plaintiff, appeals the decision of the district court granting summary judgment to National Acme Company ("Acme"), defendant.[1] The district court held that Maldonado could not recover for negligent infliction of emotional distress because he merely witnessed the death of a non-relative third party. For the reasons stated herein, we reverse the decision of the district court.

## I.

Maldonado was an inspector of parts produced by a spindle machine manufactured by Acme. On September 6, 1990, he and a coworker, Gordon Hurley, were working near the spindle machine. Hurley was operating the machine when a metal rod deformed and spun outward from the machine. Maldonado heard a strange noise from the machine, turned toward Hurley, and apparently avoided the spinning and flailing metal rod. He alleges that he was close enough to touch Hurley at the time and that he feared for his own safety. Hurley was fatally struck in the head by the metal rod. Maldonado was showered with bone fragments, tissue, brain matter, and blood. He was also struck by a piece of metal which Hurley was holding at the time of the accident, but he does not remember being cut or bruised. Acme's machine did not contact Maldonado.

Maldonado filed a personal injury suit based upon negligence, products liability law, and breach of warranty. He alleged physical and psychological injuries resulting from the shock he suffered when the machine malfunctioned and killed Hurley. Both parties moved for summary judgment. Granting summary disposition in favor of Acme, the district court held that Maldonado was a bystander and, as such, could not recover for negligent infliction of emotional distress under Michigan law as he was not an immediate member of Hurley's family. The district court disregarded Maldonado's contention that he was pursuing his case under a theory of products liability rather than bystander

recovery. The district court concluded Maldonado "has not pled any injuries other than those caused by his status as a bystander to the injury of a third person." It reasoned: "Just as Maldonado alleges witnessing the death of his coworker put him in fear for his own life, so too might every driver on the road fear for his/her own safety upon witnessing the injury or death of another."

## II.

We review the district court's grant of summary judgment *de novo*. *Tiemeyer v. Community Mut. Ins. Co.*, 8 F.3d 1094, 1097–98 (6th Cir.1993) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). We view all facts and justifiable inferences therefrom in the light most favorable to the non-moving party. *Tiemeyer*, 8 F.3d at 1098 (citation omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (citation omitted).

## III.

### A.

While sitting in diversity, a federal court must apply the substantive law of the state in which the court sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, we look to Michigan law for an understanding of the tort alleged in the present case. Michigan has abolished the "Zone of Danger" and "Physical Impact" rules as a prerequisite to recovering for negligent infliction of emotional distress. *See Daley v. LaCroix*, 384 Mich. 4, 179 N.W.2d 390 (1970) (abolishing physical impact rule); *Allinger v. Kell*, 102 Mich.App. 798, 302 N.W.2d 576, 579 (1981) (physical impact not necessary to recover for injuries

1. Neither side addressed the question of whether summary judgment should be granted against Dawn Maldonado, either at the trial court level or in the appellate briefs. Thus, we do not address this issue.

produced by emotional distress caused by defendant's tort) (citations omitted); *Toms v. McConnell,* 45 Mich.App. 647, 207 N.W.2d 140 (1973) (abolishing zone of danger requirement).[2]

■ The "Zone of Danger" requirement was abolished because "the zone-of-danger concept presupposes that a plaintiff will be close enough to the tortious activity to fear a physical impact." *Toms,* 207 N.W.2d at 144. This liberalized a claim of negligent infliction of emotional distress in one sense; however, the *Toms* court restricted it in another. The *Toms* court limited its ruling to a bystander who witnesses the negligent infliction of tortious injury upon an immediate family member. *Id.,* 207 N.W.2d at 144–45. This limitation, known as the "Bystander Recovery Rule," only applies when the plaintiff is a bystander and not a direct victim of the defendant's negligence. *See Nugent v. Bauermeister,* 195 Mich.App. 158, 489 N.W.2d 148 (1992); *Gustafson v. Faris,* 67 Mich.App. 363, 241 N.W.2d 208 (1976). Michigan has adopted four requirements suggested by Prosser to limit bystander recovery for negligent infliction of emotional distress:

1. The injury inflicted on the third person must be serious enough to cause severe mental disturbance to the plaintiff.

2. The mental shock must result in actual physical harm.

3. Recovery is limited to members of the immediate family of the third person who is injured.

4. The bystander-plaintiff must be present at the time of the accident, or at least the shock must be fairly contemporaneous with the accident.

*Nugent,* 489 N.W.2d at 149 (citations omitted). The Bystander Recovery Rule applies to a plaintiff who *observes* or *witnesses* the negligently inflicted injury of a third person. Maldonado is not an immediate family member of the victim and so cannot recover for negligent infliction of emotional distress as a "bystander." However, Michigan law does not define the term, "bystander." Black's Law Dictionary, 201 (6th ed. 1990), defines "bystander" as follows:

> One who stands near; a chance looker-on; hence one who has no concern with the business being transacted. One present but not taking part, looker-on, spectator, beholder, observer.

The definition suggests that Maldonado was more than a mere bystander. As an inspector, Maldonado was concerned with the work being performed; he was taking part in the business being transacted. He was even close enough to touch Hurley when the accident occurred. In fact, Acme's machine caused flesh, bone fragments, blood, and metal to strike Maldonado. And by avoiding the flailing metal rod and fearing for his own life, he cannot fairly be categorized as a mere spectator. Thus, to the extent that Maldonado's injuries resulted from his fear for his own safety, the limitations of the Bystander Recovery Rule would be irrelevant.

■ We therefore turn to a seminal Michigan decision for instruction. The holding in *Daley* provides the pertinent inquiry:

> [W]here a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock.

*Daley,* 179 N.W.2d at 395.

■ In *Daley,* the defendant's vehicle struck a utility pole which then severed and struck the electrical lines connected to the plaintiffs' home. A loud electrical explosion followed, resulting in property damage to the plaintiffs' home. *Id.,* 179 N.W.2d at 392. In addition to property damage, the plaintiffs[3]

---

**2.** Maldonado's repeated assertions that he was in the zone of danger and that he was physically impacted are irrelevant in view of Michigan's abolition of these prerequisites. Similarly, Acme's counterargument that Maldonado was not physically impacted by its machine misses the point.

**3.** Timothy Daley, a minor, suffered from "nervousness." Estelle Daley alleged loss of weight,

sued for emotional disturbance and nervousness as a result of the explosion. The present case is comparable to *Daley.* Although *Daley* involved property damage, it is similar to the claim here in that the defendant's machine ultimately frightened the plaintiff. As in *Daley,* Maldonado's fear resulted in nervousness, irritability, and other injuries manifesting themselves in physical symptoms.[4] The primary difference is that Maldonado not only feared for his own safety, but he also observed a third party's death. We agree with Maldonado, however, when he argues that he would have had a cause of action whether or not he observed Hurley's death, to the extent that he claims injuries resulting from his fear for his own safety. *See* RESTATEMENT (SECOND) OF TORTS § 436(2) (1965) (discussing tort based on fear for one's safety).

### B.

If witnessing Hurley's death caused Maldonado's emotional distress and attendant physical problems, then his case must fail. However if there is a dispute as to whether the objective physical injury was caused by witnessing the victim's death *or* fearing for his own safety *or* both, then Maldonado's case must go to a jury. Maldonado was seemingly close enough to the machine to fear for his own safety, and he states in his deposition that witnessing Hurley's death and fearing for his own safety admittedly affected him:

Q. Did witnessing the accident affect you, Mr. Maldonado, as your attorney suggests, the fact that you were in the area of danger?

A. Yes.

Q. Which one?

A. The fact that I was going to die myself.

Q. So witnessing what happened to Mr. Hurley didn't affect you?

A. Yes, it did.

\* \* \* \* \* \*

Q. What else can't you do?

A. I just can't enjoy life. It's strenuous, it's nerveracking, it's listening or watching for something to happen or expecting something to happen. Like you're paranoid all the time, fear for your life.

Paragraph 13 of Maldonado's brief opposing Acme's Motion for Summary Judgment further elucidates the dual nature of his claim: "Plaintiff testified ... that he was in danger of being hit by the bar stock and had to evade it himself, and, witnessed the tragic death of Hurley by decapitation." In his brief on appeal, Maldonado admits he suffered emotional distress from *both* fearing for his own life and witnessing Hurley's death: "Plaintiff's claim consists of personal injuries resulting from being showered with another person's body parts, contact with his person from a flying metal part, fear of imminent peril of [his] own injury/death, as well as witnessing the decapitation and death of Hurley."[5] The dual nature of the cause of Maldonado's injuries does not warrant summary judgment against Maldonado; instead, an effort must be made to separate the causes of his injuries.

 The case law in Michigan suggests that a plaintiff may bring an action as both bystander and direct victim. *See Nugent,* 489 N.W.2d at 150; *Allinger,* 302 N.W.2d at 580. The *Nugent* opinion briefly addressed a situation analogous to the present case. In *Nugent,* the plaintiff not only claimed bystander status, but also asserted that he was a direct victim of the defendant's negligence in being grazed by the defendant's vehicle

---

inability to perform ordinary chores, extreme nervousness, and irritability. *Daley,* 179 N.W.2d at 396.

4. The record reveals that medication was prescribed for Maldonado's nervousness, heart problems, asthma, and other ailments.

5. He also repeatedly asserts in his complaint and in answers to interrogatories and deposition

questions that he was in fear for his own safety. An excerpt from his deposition illustrates this point:

Q: After it hit him what did you do next?

A: Well meanwhile as it was swinging around going to hit him all I remember is moving back because I was afraid that it would kill me or hurt me as well.

and fearing for his own personal safety. *Nugent*, 489 N.W.2d at 150. Unfortunately, the *Nugent* court never addressed the plaintiff's second claim as a direct victim because it found that, "[a] fair reading of the complaint discloses that such a claim was not pleaded...." *Id. Nugent* implies that, if pleaded, a plaintiff may pursue a dual action as bystander and as victim. We note, of course, that a non-relative bystander claim is barred under Michigan law; however, the Bystander Recovery Rule does not preclude a claim for fearing for one's personal safety. Thus, the limitations of bystander recovery do not bar Maldonado's claim entirely.

Acme cites *Nugent* as analogous to the present case in that Maldonado was not even grazed by Acme's machine as the plaintiff in *Nugent* was. And Acme contends Maldonado was not truly in fear for his own safety. Acme argues he cannot recover because his fear was caused by merely *witnessing* an injury to a non-relative third person. As Maldonado argues he was a direct victim of negligence, we believe that his allegations of fearing for his own safety are sufficient to raise a genuine issue of material fact as to the source of his emotional distress.

## IV.

### A.

 Acme points out that its machine never touched Maldonado and that he admitted to being uninjured at the time of the accident. The district court agreed with Acme and implied that Maldonado failed to show an objective physical injury. However, an objective physical injury can result from the initial emotional distress, "notwithstanding the absence of any physical impact upon plaintiff *at the time of the mental shock.*" *Daley*, 179 N.W.2d at 395 (emphasis added). To satisfy the *Daley* standard of a definite and objective physical injury, Michigan courts are extremely lenient in finding allegations sufficient. *Stites v. Sundstrand Heat Transfer, Inc.*, 660 F.Supp. 1516, 1527 (W.D.Mich.1987). Noting even nervousness

may be a sufficient physical injury, the *Stites* court stated: "I interpret Michigan law as imposing only a slight burden on the plaintiffs in this regard, and as expressing a strong presumption that the jury should decide whether a plaintiff's claim of negligent infliction of emotional distress is valid." *Id.; but see Meyerhoff v. Turner Constr. Co.*, 202 Mich.App. 499, 509 N.W.2d 847, 850 (1993)(general claims of physical distress, pain, and suffering are insufficient), *vacated on other grounds*, 447 Mich. 1022, 527 N.W.2d 513 (1994) (previous opinion vacated and remanded to appellate court to determine if trial court improperly took judicial notice of certain facts). The pleadings in the present case contain general claims of physical injury as well as more specific allegations. In Maldonado's deposition, he claims physical injury associated with his post-traumatic stress disorder, asthma, high blood pressure, heart problems, and paranoia. In his answers to interrogatories, he alleges feeling jittery, anxious, irritable, depressed, and fearful of death.[6]

*Daley* provides that "even though the question [of whether nervousness is an objective physical injury] is a close one, on favorable view, [plaintiff] presented facts from which ... a jury could reasonably find or infer a causal relation between defendant's alleged negligence and the injuries alleged." *Daley*, 179 N.W.2d at 396. As for the second plaintiff, the *Daley* court similarly found that a claim of extreme nervousness and irritability, repeatedly testified to, were facts from which a jury could find or infer a compensable physical injury. *Id.* Maldonado has presented similar facts to those of the *Daley* plaintiffs.

### B.

 The next question is whether Acme was the proximate cause of Maldonado's physical injury. Michigan case law generally requires the jury to determine proximate cause. *Arbelius v. Poletti*, 188 Mich. App. 14, 469 N.W.2d 436, 439 (1991). "Although proximate cause is usually a factual

---

6. In addition, Maldonado's brief in opposition to Acme's motion for summary judgment alleges that his health care providers have diagnosed

him with post-traumatic stress disorder resulting from being "in imminent fear of serious injury or death" from the accident.

issue to be decided by the trier of fact, the court should rule as a matter of law if reasonable minds could not differ [regarding the proximate cause of injury]."[7] *Derbeck v. Ward,* 178 Mich.App. 38, 443 N.W.2d 812, 814 (1989) (citation omitted). The district court concluded: "[Maldonado's] efforts to characterize this action as anything other than a case in which a plaintiff was a bystander to the negligently inflicted injury of a third person has [sic] failed." We disagree with this conclusion. Reasonable minds could conceivably differ as to whether the objective physical injury was caused by witnessing Hurley's death alone or in tandem with fearing for personal safety. Michigan law holds: "Any doubts about the relations between the causes and the effects should be resolved by the jury. The determination of remoteness should seldom, if ever, be summarily determined." *Arbelius,* 469 N.W.2d at 439.

### V.

 Maldonado asserts in his brief, as he did in his motion for partial summary judgment, that the doctrine of collateral estoppel precludes Acme from denying liability in the present case.[8] The district court expressly stated that it did not reach the issues raised in his motion because it granted summary judgment for Acme. In general, an appellate court will not address issues on appeal that were not ruled upon below. *Meade v. Pension Appeals & Review Comm.,* 966 F.2d 190, 194 (6th Cir.1992) (citation omitted); *In re Allied Supermarkets, Inc.* 951 F.2d 718, 725 (6th Cir.1991). If "the proper resolution is beyond doubt" or "injustice might otherwise result," the Sixth Circuit will address issues not decided by the district court. *Meade,* 966 F.2d at 194. Such exceptional circumstances do not exist in the present case, and we refrain from entertaining the issues related to collateral estoppel.

### VI.

In conclusion, we reject Acme's arguments that Maldonado's entire claim fits the mold of the simple bystander case and that he has not shown an objective physical injury. Viewing the evidence in the light most favorable to Maldonado, we hold that there is a genuine issue whether Maldonado's injuries were caused, at least in part, by his fear for his own safety. Thus, summary judgment was inappropriate as there was sufficient proof to present a genuine issue of fact for trial. Accordingly, the decision of the district court is hereby **REVERSED**, and this matter is **REMANDED** for further proceedings consistent with this opinion.

---

7. If merely a bystander, Maldonado's case fails because Michigan case law expressly delineates the proximate cause issue: defendant cannot be held legally responsible unless plaintiff is an immediate family member of the victim.

8. Maldonado asserts that Acme's liability has been previously determined by a jury verdict for Hurley's estate in a wrongful death action. The damages in that case were not awarded by jury, but rather agreed upon by Acme and Hurley's estate in a subsequent settlement.