T.C. Memo. 2011-256

UNITED STATES TAX COURT

GLENN R. CRANE AND DEBORAH A. CRANE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27795-09.                    Filed November 1, 2011.

<u>Joseph Falcone</u>, for petitioners.

<u>Evan H. Kaploe</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of
$14,186 in, and an accuracy-related penalty of $2,284 under

section 6662(a)[1] on, petitioners' Federal income tax (tax) for their taxable year 2007.

The issues remaining for decision for petitioners' taxable year 2007 are:

(1) Are petitioners entitled to exclude from gross income under section 104(a)(2) an arbitration award of $79,329.34?  We hold that they are not.

(2) Are petitioners liable for the accuracy-related penalty under section 6662(a)?  We hold that they are.

## FINDINGS OF FACT

Some of the facts have been stipulated by the parties and are so found.

At the time petitioners filed the petition, they resided in Michigan.

From approximately 2000 until at least 2004, PCS[2] had a contractual arrangement with Oakwood Healthcare, Inc. (Oakwood), under which PCS provided certain of its employees to Oakwood to perform certain services for Oakwood.  (We shall refer to the contractual arrangement between PCS and Oakwood as the PCS/Oakwood arrangement.)  Pursuant to the PCS/Oakwood arrangement,

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The record does not establish whether PCS is the full name of that organization.

petitioner Deborah A. Crane (Ms. Crane), an employee of PCS, performed services for Oakwood and worked with an Oakwood employee named Roger Plue (Mr. Plue), who was her direct supervisor.

During part of the time that Ms. Crane performed services for Oakwood pursuant to the PCS/Oakwood arrangement, petitioners' son was receiving treatment for cancer in Boston, Massachusetts (Boston). Petitioner Glenn R. Crane (Mr. Crane), who was retired, stayed in Boston while petitioners' son was receiving that treatment, until their son died on December 23, 2002.

At a time not established by the record shortly after Mr. Crane returned from Boston to petitioners' home, he noticed that Ms. Crane, who was still performing services for Oakland pursuant to the PCS/Oakwood arrangement, was exhibiting certain unusual movements of her eyes and tongue and was having nightmares. Around the middle of 2005, Ms. Crane was diagnosed with cancer.

On July 14, 2004, PCS gave Oakwood written notice (notice of sexual harassment) in which it claimed that Mr. Plue had sexually harassed Amie Slaven (Ms. Slaven), an employee of PCS, who, like Ms. Crane, was performing services for Oakwood pursuant to the PCS/Oakwood arrangement and worked with Mr. Plue. In response to the notice of sexual harassment, Oakwood conducted an investigation. During that investigation, Ms. Crane supported Ms. Slaven's claim of sexual harassment.

Sometime after PCS gave Oakwood the notice of sexual harassment, Oakwood terminated the PCS/Oakwood arrangement. As a result, Ms. Crane stopped performing services for Oakwood pursuant to that arrangement. Thereafter, Ms. Crane applied to Oakwood for a position described as physician liaison that it had advertised. Oakwood did not offer that position to Ms. Crane.

At a time not established by the record, Ms. Crane filed a claim against Oakwood. Pursuant to an alternative dispute resolution agreement, that claim was referred to an arbitrator for resolution.

According to a document entitled "Arbitration Decision" that was dated September 21, 2007 (September 21, 2007 arbitrator's decision), Ms. Crane's claim was:

> that by aiding Amie Slaven in pursuing her claim [of sexual harassment] and acting as a witness for Amie Slaven, Oakwood retaliated against her [Ms. Crane] causing her both economic and non-economic damages.
>
> The retaliatory adverse actions claimed by Crane include:
>
> 1.  Oakwood demoting her from physician liaison to laboratory sales representative;
>
> 2.  Oakwood declining to renew its contract with PCS; and
>
> 3.  Oakwood failing to offer her a physician liaison job at Annapolis Hospital.

(We shall refer to the arbitrator's description of Ms. Crane's claim against Oakwood that the arbitrator set forth in the

September 21, 2007 arbitrator's decision (quoted above) as Ms. Crane's claim against Oakwood.)

The arbitrator resolved Ms. Crane's claim against Oakwood. In resolving that claim, the arbitrator concluded in pertinent part in the September 21, 2007 arbitrator's decision:

> Based on the record as a whole, I am not persuaded that Plaintiff [Ms. Crane] has met her burden in showing that it was more likely than not that these [retaliatory adverse] actions [claimed by Ms. Crane and quoted above] were taken, even in part, to retaliate against Crane's participation in Amie Slaven's sexual harassment complaint.

> It may be true that the PCS written notice of the complaint triggered Doug Welday's decision to change Crane's position and the other two PCS employees. If, however, the motivation for Welday's decision was to remove Crane and the other PCS employees from Plue's supervision pending an investigation, this would not amount to retaliation. Rather, it was a reasonable response to creating an acceptable working situation pending completion of the investigation.

> The timing of Oakwood's decision not to renew the PCS contract was, likely, accelerated by the Slaven's sexual harassment complaint because it caused Welday to analyze this business relationship sooner than he might have otherwise. The ultimate decision to terminate, however, was based upon business considerations, not a desire to retaliate against Crane or other PCS employees.

> The evidence relating to Oakwood's decision not to offer Crane the physician liaison position is somewhat more confusing. The evidence was unclear as to the particular physician liaison position posted. It is undisputed, however, that the physician liaison position for which Crane applied was pursuant to a posting that stated the position was to replace PCS employees. The totality of the evidence presented, however, does not convince me that her failure to receive that position was in retaliation for her actions in the Slaven's sexual harassment complaint. Even if it were, however,

she does not appear to have suffered economic damages flowing from her failure to receive that job offer. I find that her reason for not accepting the lab sales position was because of the lower base salary, as she so testified. I also find that this position was a comparable position to the position she had been performing at Oakwood and it may have been a comparable position to the physician liaison position she was not offered. Based on the evidence presented, I find that Crane had a duty to accept the lab sales position in order to mitigate her damages. The evidence established that, if she had accepted that position, she would have, likely, suffered no economic damages.

Consequently, I find that Crane did not suffer any economic damages in this case.

Crane's reason for not accepting the lab sales position is also relevant to her claim for future non-economic damages. I conclude from the evidence, that if the base salary of the lab sales position had been higher, Crane would have accepted that position. A willingness to accept that position belies her claim that the retaliation she experienced at Oakwood as the result of her involvement in the Slaven sexual harassment claim created an intolerable work environment.

Notwithstanding my prior findings, I do find that Crane suffered non-economic damages as the result of Plue's direct actions and Oakwood's failure to do more to control Plue's actions during the time the investigation into Slaven's sexual harassment complaint was pending. I find that Plue purposely acted in a way to intimidate Crane's testimony in that investigation. I also find that given little or no communication by Oakwood during the time the investigation was pending to Crane as to how she was, if at all, being protected from Plue's intimidation, Oakwood acquiesced in Plue's actions. This is especially true since some of Plue's acts of intimidation were directly contrary to instructions he was given by his superior.

In compensation for these non-economic damages, I award Crane the sum of $75,000 which includes any and all types of damages she may be entitled to claim including any attorney's fee award.

On October 11, 2007, the arbitrator amended his September 21, 2007 arbitrator's decision (October 11, 2007 amendment of the September 21, 2007 arbitrator's decision) and made a final award to Ms. Crane of $79,329.34, instead of the $75,000 that he had awarded her in the September 21, 2007 arbitrator's decision.[3] That amendment stated in pertinent part:

> My original decision [September 21, 2007 arbitrator's decision] reflected an effort to comply with the request of Plaintiff's [Ms. Crane's] counsel to limit my time as much as practicable in deciding this matter. Attempting to comply with that request, I decided that the appropriate amount of proximately caused non-economic damages for the violations I found was $50,000 and that an educated estimate of Plaintiff's costs and attorneys fees connected to the arbitration were approximately $25,000. Instead of forcing the parties to incur the expense of briefing that issue and spending time resolving any disagreements related to costs and fees, I included all forms of damage in my original decision [to award Ms. Crane $75,000].
>
> Now, however, I have the benefit of Plaintiff's counsel's itemization of her attorneys fees and costs. Consequently, I will amend my award to reflect the more accurate information. My award to Plaintiff for her non-economic injuries is $50,000. My award to Plaintiff for her attorneys fees is $23,975, and costs of $5,354.34. I have not included in the award of costs any amounts for the arbitrator's fees. There is a specific provision in the "Alternate Dispute Resolution Agreement" that states, "the parties will share the cost of the arbitrator equally." * * *

> *       *       *       *       *       *       *

---

[3]We shall sometimes refer collectively to the September 21, 2007 arbitrator's decision and the October 11, 2007 amendment of the September 21, 2007 arbitrator's decision as the final arbitration decision.

Consequently, my amended final award to Plaintiff is $79,329.34. * * *

(We shall refer to the arbitrator's amended final award to Ms. Crane of $79,329.34 that the arbitrator made in the October 11, 2007 amendment of the September 21, 2007 arbitrator's decision (quoted above) as Ms. Crane's $79,329.34 final arbitration award.)

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return, for their taxable year 2007 (2007 return). Petitioners did not discuss in any detail that return with their accountant. In the 2007 return, petitioners did not include in gross income Ms. Crane's $79,329.34 final arbitration award. Petitioners also did not include in gross income in their 2007 return retirement income of $13,382[4] (petitioners' retirement income) that they received in 2007. Petitioners also underreported in that return $2,766 of tax withheld.

On August 24, 2009, respondent issued to petitioners a notice of deficiency (notice) for their taxable year 2007, in which respondent made various determinations, including the

---

[4]The parties stipulated that the retirement income that petitioners received during 2007 was $13,382. However, as discussed below, the notice of deficiency that respondent issued to petitioners for their taxable year 2007 determined that they failed to include in gross income for that year $13,832 of retirement income. The record does not establish whether the parties' stipulation or the notice of deficiency is correct.

following.  Respondent determined that $44,783 of Ms. Crane's
$79,329.34 final arbitration award is includible in petitioners'
gross income.  Respondent also determined that petitioners'
retirement income of $13,832[5] is includible in their gross in-
come.  In addition, respondent determined that petitioners
underreported $2,766 of tax withheld.  Respondent also determined
to impose on petitioners an accuracy-related penalty under
section 6662(a).

                              OPINION

     Petitioners have the burden of establishing that the deter-
minations that remain at issue in the notice are wrong.  See Rule
142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Respondent
bears the burden of proof with respect to the new matter that
respondent raises on brief; namely, whether petitioners are
required to include in gross income for their taxable year 2007
Ms. Crane's $79,329.34 final arbitration award, instead of only
$44,783 of that award that respondent determined in the notice to
include in their gross income.  See Rule 142(a); see also Rule
41(b).

Section 104(a)(2)

     Before turning to the parties' respective positions with
respect to the issue presented under section 104(a)(2), we shall

---

[5]See supra note 4.

set forth certain principles that govern our consideration of that issue.

Section 61(a) provides the following sweeping definition of the term "gross income":  "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived".  Not only is section 61(a) broad in its scope, <u>Commissioner v. Schleier</u>, 515 U.S. 323, 328 (1995), exclusions from gross income must be narrowly construed, <u>id.</u>

Section 104(a)(2) provides that gross income does not include:

> (2) the amount of any damages (other than punitive damages) received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal physical injuries or physical sickness;

The regulations under section 104(a)(2) provide in pertinent part:

> The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Sec. 1.104-1(c), Income Tax Regs.

The Supreme Court of the United States (Supreme Court) summarized the requirements of section 104(a)(2) as follows:

> In sum, the plain language of § 104(a)(2), the text of the applicable regulation, and our decision in <u>Burke</u> establish two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2).  First, the taxpayer must demon-

strate that the underlying cause of action giving rise to the recovery is "based upon tort or tort type rights"; and second, the taxpayer must show that the damages were received "on account of personal injuries or sickness." * * *

Commissioner v. Schleier, supra at 336-337.

When the Supreme Court issued its opinion in Commissioner v. Schleier, supra, section 104(a)(2), as in effect for the year at issue in Schleier, required, inter alia, that, in order to be excluded from gross income, an amount of damages had to be received "on account of personal injuries or sickness". After the Supreme Court issued its opinion in Schleier, Congress amended (1996 amendment) section 104(a)(2), effective for amounts received after August 20, 1996, by adding the requirement that, in order to be excluded from gross income, any amount received must be on account of personal injuries that are physical or sickness that is physical.[6] Small Business Job Protection Act of 1996, Pub. L. 104-188, sec. 1605, 110 Stat. 1838. The 1996 amendment does not otherwise change the requirements of section 104(a)(2) or the analysis set forth in Commissioner v. Schleier, supra; it imposes an additional requirement in order for an

---

[6]Sec. 104(a) provides that emotional distress is not to be treated as a physical injury or physical sickness for purposes of sec. 104(a)(2), except for damages not in excess of the amount paid for medical care attributable to emotional distress. In this connection, the legislative history of the 1996 amendment states: "It is intended that the term emotional distress includes symptoms (e.g., insomnia, headaches, stomach disorders) which may result from such emotional distress." H. Conf. Rept. 104-737, at 301 n.56 (1996), 1996-3 C.B. 741, 1041.

amount to qualify for exclusion from gross income under that section.

Where damages are awarded, the nature of the claim that was the actual basis for the award controls whether such damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992). The determination of the nature of the claim is factual. Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part, and remanded on another issue 70 F.3d 34 (5th Cir. 1995); Seay v. Commissioner, 58 T.C. 32, 37 (1972). That determination is usually made by reference to the document that establishes the legal obligation of a party in the dispute to pay the awarded damages. See Knuckles v. Commissioner, 349 F.2d 610, 613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Robinson v. Commissioner, supra at 126. If that document lacks express language stating the nature of the dispute the awarded damages were intended to resolve, the intent of the payor is critical to that determination. See Knuckles v. Commissioner, supra at 613; see also Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21. Although the belief of the payee is relevant to that inquiry, the character of the award hinges ultimately on the dominant reason the payor is making the payment. Agar v. Commissioner, supra at 284; Fono v. Commissioner, 79 T.C. 680, 696 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984). Whether the award

is excludable from gross income under section 104(a)(2) depends on the nature and the character of the claim asserted, and not upon the validity of that claim. See <u>Bent v. Commissioner</u>, 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1987); <u>Glynn v. Commissioner</u>, 76 T.C. 116, 119 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982); <u>Seay v. Commissioner</u>, <u>supra</u> at 37.

It is respondent's position that Ms. Crane's $79,329.34 final arbitration award is not excludable from petitioners' gross income under section 104(a)(2) because that award was not received on account of personal physical injuries or physical sickness of Ms. Crane.

It is petitioners' position that petitioners are entitled under section 104(a)(2) to exclude from gross income the award that the arbitrator made to Ms. Crane in the final arbitration decision. In support of that position, petitioners argue in pertinent part:[7]

> The arbitrator, when he was writing his opinion, appears not to be worried about how the Internal Revenue Code would characterize the award he was making.

---

[7]Petitioners also argue that if we were to find that the award to Ms. Crane in the final arbitration decision was not made on account of personal physical injuries or physical sickness of Ms. Crane, the amount includible in their gross income should not exceed $44,783. That is because, according to petitioners, Oakwood paid Ms. Crane only $44,783 of Ms. Crane's $79,329.34 final arbitration award, and $44,783 is the amount that respondent determined in the notice to include in petitioners' gross income.

* * * he did not specifically mention whether the award was for physical injuries or was for emotional distress.

When the Arbitration Decision [September 21, 2007 arbitrator's decision] is read carefully, however, it becomes clear that the basis upon which the award to Deborah Crane was based was the negligent failure of Oakwood Healthcare, Inc., to restrict the conduct of Mr. Plue toward Deborah Crane, or, in the words of the arbitrator, "Oakwood's failure to put a tighter reign towards Mr. Plue's conduct towards persons involved in the investigation" and thereby allowed him to "meddle in the on-going investigation."

As a result, the arbitration award could not have included damages for emotional distress because under the facts found by the arbitrator, the award had to be for physical injuries. Damages for physical injuries were the only types of damages Deborah Crane was entitled to claim and the arbitrator did not have to spell it out any further.

Under Michigan law, a plaintiff can only recover for emotional distress proximately caused by a defendant's negligent conduct if there is a definite and objective injury. The emotional distress must manifest itself in the form of definite and objective physical injury. Stites v. Sundstrand Heat Transfer, Inc., 660 F. Supp. 1516, 1526 (W.D. Mich. 1987). The damages are awarded for the physical injury, not the emotional distress. Daley v. LaCroix, 384 Mich. 4, 12-13 (Mich. 1970).

*       *       *       *       *       *       *

As a result, when the facts and circumstances are taken into consideration, because of the way Michigan law prohibits the recovery for purely emotional distress damages in a negligence claim, and because Deborah Crane suffered from a physical sickness or illness because of her treatment in the workplace, this Court should find that the arbitration award was made to compensate Deborah Crane for physical harm or illness suffered as the natural result of the negligent conduct of Oakland [sic] Healthcare, Inc.

We find petitioners' argument to be factually and legally flawed.[8]  By way of illustration of the factual flaws in petitioners' argument, the record is devoid of evidence establishing petitioners' contention that Ms. Crane "suffered from a physical sickness or illness because of her treatment in the workplace".  Nor does the record contain evidence establishing petitioners' contentions that as a result of the negligent conduct of Oakwood Ms. Crane suffered "emotional distress" that manifested "itself in the form of [Ms. Crane's] definite and objective physical injury."  The record is also devoid of evidence establishing that Ms. Crane's claim against Oakwood was for,[9] or that the arbitra-

---

[8]We find the cases decided under Michigan law on which petitioners are relying on brief to be materially distinguishable from the instant case and petitioners' reliance on those cases to be misplaced.  We also note that the record does not establish that the arbitrator was relying on the Michigan law on which petitioners rely when he made the award that he did in the final arbitration decision.

[9]In the September 21, 2007 arbitrator's decision, the arbitrator described Ms. Crane's claim against Oakwood as follows:

> by aiding Amie Slaven in pursuing her claim [of sexual harassment] and acting as a witness for Amie Slaven, Oakwood retaliated against her [Ms. Crane] causing her both economic and non-economic damages.

> The retaliatory adverse actions claimed by Crane include:

> 1.    Oakwood demoting her from physician liaison to laboratory sales representative;

> 2.    Oakwood declining to renew its contract with PCS; and

(continued...)

tor's award in his final arbitration decision was made on account of,[10] personal physical injuries or physical sickness of Ms. Crane.

On the record before us, we find that petitioners have failed to carry their burden of establishing that the arbitrator made an award to Ms. Crane in his final arbitration decision on account of personal physical injuries or physical sickness of Ms. Crane, as required by section 104(a)(2).

We turn now to petitioners' argument that if we were to find, as we have, that the arbitrator did not make an award to Ms. Crane in his final arbitration decision on account of personal physical injuries or physical sickness of Ms. Crane, only $44,783 of Ms. Crane's $79,329.84 final arbitration award is includible in petitioners' gross income. That is because, according to petitioners, Oakwood paid Ms. Crane only $44,783 of

---

[9](...continued)
    3.    Oakwood failing to offer her a physician
          liaison job at Annapolis Hospital.

According to petitioners, under the Michigan law that they assert applies here, and that we have concluded is inapplicable here, "The emotional distress must manifest itself in the form of definite and objective physical injury." The record establishes that Ms. Crane did not claim in Ms. Crane's claim against Oakwood any "emotional distress" as a result of Oakwood's negligent conduct that "manifest[ed] itself in the form of [her] definite and objective physical injury."

[10]The record establishes that the arbitrator's award in his final arbitration decision was not made on account of "emotional distress" that "manifest[ed] itself in the form of definite and objective physical injury" of Ms. Crane.

Ms. Crane's $79,329.84 final arbitration award, and $44,783 is the amount respondent determined in the notice to include in petitioners' gross income.

In the October 11, 2007 amendment of the September 21, 2007 arbitrator's decision, the arbitrator stated in pertinent part:

> Now * * * I have the benefit of Plaintiff's [Ms. Crane's] counsel's itemization of her attorneys fees and costs. Consequently, I will amend my award to reflect the more accurate information. My award to Plaintiff for her non-economic injuries is $50,000. My award to Plaintiff for her attorneys fees is $23,975, and costs of $5,354.34. I have not included in the award of costs any amounts for the arbitrator's fees. There is a specific provision in the "Alternate Dispute Resolution Agreement" that states, "the parties will share the cost of the arbitrator equally." * * *

>     *      *      *      *      *      *      *

> Consequently, my amended final award to Plaintiff is $79,329.34. * * *

On the record before us, we find that, in addition to the $44,783 that the arbitrator awarded to Ms. Crane in his final arbitration decision and that respondent determined in the notice to include in petitioners' gross income, the award that the arbitrator made in that decision to Ms. Crane of $23,975 for her attorney's fees, $5,354.34 for her costs, and $5,217 for her share of the cost of the arbitrator[11] is includible in petition-

---

[11]The parties stipulated that "Deborah Crane received * * * $50,000 from an award from her employer during the 2007 taxable year." We presume that the difference (i.e., $5,217) between the amount (i.e., $50,000) that the parties stipulated Ms. Crane received and the amount (i.e., $44,783) that respondent

(continued...)

ers' gross income. See, e.g., <u>Sinyard v. Commissioner</u>, 268 F.3d 756, 759 (9th Cir. 2001), affg. T.C. Memo. 1998-364. That Oakwood may have paid (1) Ms. Crane's attorney's fees and costs directly to Ms. Crane's attorney and (2) Ms. Crane's share of the cost of the arbitrator directly to the arbitrator does not change that result. See <u>id.</u>

Based upon our examination of the entire record before us, we find that Ms. Crane's $79,329.34 final arbitration award is includible in petitioners' gross income for their taxable year 2007.[12]

Accuracy-Related Penalty Under Section 6662(a)

Before turning to the parties' respective positions with respect to the issue presented under section 6662(a), we shall set forth certain principles that govern our consideration of that issue.

---

[11](...continued)
determined in the notice to include in petitioners' gross income is Ms. Crane's share of the cost of the arbitrator that she was obligated to pay under the "Alternate Dispute Resolution Agreement" to which the arbitrator referred in his October 11, 2007 amendment of his September 21, 2007 arbitrator's decision.

[12]Although we have found that Ms. Crane's $79,329.34 final arbitration award is includible in petitioners' gross income for their taxable year 2007, we leave it to the parties to address and resolve as part of the computations under Rule 155 whether petitioners are entitled to deduct Ms. Crane's attorney's fees and costs and her share of the cost of the arbitrator. See secs. 55, 67, 68, 212(1); see also <u>Commissioner v. Banks</u>, 543 U.S. 426, 432 (2005).

Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, (1) negligence or disregard of rules or regulations, sec. 6662(b)(1), or (2) a substantial understatement of tax, sec. 6662(b)(2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code. Sec. 6662(c). Negligence has also been defined as a failure to do what a reasonable person would do under the circumstances. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), affg. T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), affd. 893 F.2d 656 (4th Cir. 1990). The term "negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

For purposes of section 6662(b)(2), an understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the return. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of ten percent of the tax required to be

shown in the tax return for that year or $5,000.  Sec.
6662(d)(1)(A).

The accuracy-related penalty under section 6662(a) does not
apply to any portion of an underpayment if it is shown that there
was reasonable cause for, and that the taxpayer acted in good
faith with respect to, such portion.  Sec. 6664(c)(1).  The
determination of whether the taxpayer acted with reasonable cause
and in good faith depends on the pertinent facts and circum-
stances, including the taxpayer's efforts to assess the tax-
payer's proper tax liability, the knowledge and experience of the
taxpayer, and the reliance on the advice of a professional, such
as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Reli-
ance on the advice of a professional does not necessarily demon-
strate reasonable cause and good faith unless, under all the
circumstances, such reliance was reasonable and the taxpayer
acted in good faith.  Id.  In this connection, a taxpayer must
demonstrate that the taxpayer's reliance on the advice of a
professional concerning substantive tax law was objectively
reasonable.  Goldman v. Commissioner, 39 F.3d 402, 408 (2d Cir.
1994), affg. T.C. Memo. 1993-480.  A taxpayer's reliance on the
advice of a professional will be objectively reasonable only if
the taxpayer has provided necessary and accurate information to
the professional.  Neonatology Associates, P.A. v. Commissioner,

115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); see also <u>Ma-Tran Corp. v. Commissioner</u>, 70 T.C. 158, 173 (1978).

Respondent has the burden of production with respect to the accuracy-related penalty under section 6662(a) that respondent determined in the notice. See sec. 7491(c); <u>Higbee v. Commissioner</u>, 116 T.C. 438, 446-447 (2001). To satisfy respondent's burden of production, respondent must come forward with "sufficient evidence indicating that it is appropriate to impose", <u>Higbee v. Commissioner</u>, <u>supra</u> at 446, the accuracy-related penalty. Although respondent bears the burden of production with respect to the accuracy-related penalty under section 6662(a) that respondent determined, respondent "need not introduce evidence regarding reasonable cause * * * or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues." <u>Id.</u>

Respondent argues that petitioners are liable for the accuracy-related penalty under section 6662(a) because of (1) a substantial understatement of tax under section 6662(b)(2) and (2) petitioners' negligence or disregard of rules or regulations under section 6662(b)(1).

Respondent determined in the notice to impose the accuracy-related penalty for petitioners' taxable year 2007 on an under-

payment of tax for that year[13] that is attributable to a substantial understatement of tax [14] resulting from petitioners' failure to include in gross income (1) $44,783 of Ms. Crane's $79,329.34 final arbitration award that petitioners argue is not, but that we have held is, includible in their gross income and (2) petitioners' retirement income and other income that petitioners concede are includible in their gross income.  On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a).

It is petitioners' position that under section 6664(c)(1) they had reasonable cause for, and acted in good faith with respect to, the portion of the underpayment for their taxable year 2007 that is attributable to their failure to include in

---

[13]We have held, as respondent argues on brief, that Ms. Crane's $79,329.34 final arbitration award, and not just $44,783 of that award that respondent determined to include in petitioners' gross income in the notice, is includible in petitioners' gross income.  Respondent does <u>not</u> argue on brief that the accuracy-related penalty under sec. 6662(a) should be imposed on an underpayment of tax for petitioners' taxable year 2007 that is attributable to petitioners' failure to include in gross income, inter alia, the excess of Ms. Crane's $79,329.34 final arbitration award over that $44,783.

[14]In the notice, respondent determined that the amount of tax required to be shown in petitioners' 2007 return was $21,740. The amount shown as tax in that return was $7,554.  The excess of the amount of tax that respondent determined in the notice was required to be shown in petitioners' 2007 return over the amount of tax shown in that return is $14,186, the deficiency that respondent determined in the notice for petitioners' taxable year 2007.

gross income in their 2007 return (1) $44,783 of Ms. Crane's $79,329.34 final arbitration award and (2) petitioners' retirement income.

We turn first to petitioners' argument under section 6664(c)(1) regarding the $44,783 of Ms. Crane's $79,329.34 final arbitration award that they did not include in gross income in their 2007 return. At trial, Mr. Crane testified that petitioners did not include that $44,783 in that return because Ms. Crane told him that the attorney who represented her during the arbitration proceeding, Deborah Gordon (Ms. Gordon), had informed her that the award that the arbitrator made "wasn't from loss of wages; it was from this physical and mental thing that you [Ms. Crane] were going through."[15]

Assuming arguendo that Ms. Gordon, Ms. Crane's attorney with respect to Ms. Crane's claim against Oakwood, informed Ms. Crane that the award that the arbitrator made to her was not taxable, Mr. Crane admitted at trial that he questioned the validity of what Ms. Gordon had purportedly told Ms. Crane. Mr. Crane testified:

---

[15]Respondent objected at trial on the ground of hearsay to the recitation by Mr. Crane of what Ms. Gordon purportedly told Ms. Crane as to the nature of the award that the arbitrator had made to Ms. Crane. We overruled respondent's objection because petitioners indicated that they were not offering that recitation for the truth of its content. On brief, respondent asks us to reconsider and change that evidentiary ruling. We decline to overrule our evidentiary ruling.

I was going to challenge her [Ms. Crane] but she was pretty fragile already at that time and she was getting upset: It's not taxable. Deborah Gordon told me it wasn't taxable. So I [Mr. Crane] didn't pursue it. So when I did the income tax I just assumed it wasn't.

In determining whether a taxpayer acted with reasonable cause and in good faith under section 6664(c)(1), "Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Sec. 1.6664-4(b)(1), Income Tax Regs. Mr. Crane's testimony establishes that he had serious concerns about whether petitioners should exclude from gross income the award that the arbitrator made to Ms. Crane. Nonetheless, the record does not establish that Mr. Crane asked the accountant who prepared petitioners' 2007 return[16] or made any other effort to determine whether his concerns were justified.[17]

On the record before us, we find that petitioners have failed to carry their burden of establishing that there was reasonable cause for, and that they acted in good faith with respect to, the portion of the underpayment for their taxable year 2007 that is attributable to petitioners' failure to include

---

[16]Mr. Crane testified that he failed to discuss in any detail petitioners' 2007 tax return with their accountant.

[17]It is also significant that the record is devoid of evidence establishing what Ms. Crane told Ms. Gordon when they discussed whether the award that the arbitrator made to Ms. Crane is taxable. See Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); see also Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978).

in gross income $44,783 of Ms. Crane's $79,329.34 final arbitration award.

We turn next to petitioners' argument under section 6664(c)(1) regarding petitioners' retirement income that they did not include in gross income in their 2007 return.  According to petitioners, because $2,766 of tax had been withheld on that retirement income,[18] it was reasonable for them to believe that they did not have to include petitioners' retirement income in gross income in their 2007 return.

We note first that the record does not establish petitioners' contention that $2,766 of tax was withheld from petitioners' retirement income.  Assuming arguendo that the record established that contention, the record is devoid of evidence establishing whether petitioners made any effort to ascertain whether they had an obligation to include petitioners' retirement income in gross income in their 2007 return.[19]  See sec. 1.6664-4(b)(1), Income Tax Regs.

On the record before us, we find that petitioners have failed to carry their burden of establishing that there was reasonable cause for, and that they acted in good faith with respect to, the portion of the underpayment for their taxable

---

[18]Petitioners underreported $2,766 of the tax withheld in their 2007 return.

[19]See supra note 16.

year 2007 that is attributable to their failure to include in gross income petitioners' retirement income.

Based upon our examination of the entire record before us, we find that petitioners have failed to carry their burden of establishing that they are not liable for their taxable year 2007 for the accuracy-related penalty under section 6662(a).

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.